IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| BOBBY MORRIS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 4:25-cv-00441 -SPM |
| NRRM, LLC, | ) ) | 12-PERSON JURY DEMAND |
| Defendant. | ) ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**AMENDED COMPLAINT**

Defendant NRRM, LLC d/b/a CarShield submits this memorandum in support of its

Motion to Dismiss the Amended Complaint for failure to state a claim for relief under Fed. R. Civ.

P. 12(b)(6) and the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

## I.    INTRODUCTION

Plaintiff Bobby Morris gave his cell phone number, email, and information about his

personal vehicle to CarShield when he signed up for a free quote on a vehicle service contract

("VSC"). Morris now asserts two causes of action against CarShield for allegedly calling his cell

phone without permission in violation of the TCPA.

These claims should be dismissed because the alleged phone calls Morris complains about

were made with his prior express written consent. The recordings of the so-called violative calls

show that Plaintiff was initially contacted based on a written solicitation he made to CarShield.

The recordings also show that Plaintiff never asked not to be called, nor rescinded his consent, all

of which contradict his allegations. This matter is appropriate for dismissal because Plaintiff has

alleged certain conduct that places his activity within the bounds of his complaint, much like when someone alleges a breach of contract but does not attach the contract and the contract is still deemed part of the pleadings.

## II.   BACKGROUND

On October 26, 2024, Morris voluntarily submitted an online request for information through one of CarShield's portals located at <https://carshield.com/get-free-quote>, requesting VSC information for his Ford F250 Super Duty (the "Vehicle"). A complete and accurate copy of the information Morris submitted, and the consent language attached to the information request, is attached hereto as **Exhibit 1**.[1] In accordance with this prior express and written consent, CarShield attempted to contact Morris on October 27, 2024 using the contact information provided. A CarShield representative left a voicemail for Morris, specifically indicating that CarShield was reaching out in response to the request he submitted online, and to discuss his Vehicle. A true and accurate recording of this voicemail message, and a transcript thereof, is attached hereto as **Exhibit 2** and **Exhibit 3**, respectively.

Twenty-nine minutes later, CarShield placed another outbound call to Morris, which he answered. There, ***Morris verified the vehicle information he provided online***—expressly confirming (1) the make and model of his Vehicle; (2) his zip code; (3) the number of miles on the Vehicle; (4) the fact that the Vehicle had no check engine light warnings and was not leaking fluid; and (5) that the Vehicle was otherwise running well overall. A true and accurate recording of this interaction, and a transcript thereof, is attached hereto as **Exhibit 4** and **Exhibit 5**, respectively.

---

[1] Although matters outside the pleading generally may not be considered in deciding a Rule 12(b)(6) motion to dismiss, documents which "are necessarily embraced by the pleadings" can be considered. *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014) (quoting *Porous Media Corp.*, 186 F.3d at 1079). Because Plaintiff's allegations arise entirely from these calls, and expressly claims he revoked any consent given to CarShield on these calls, documents bearing on the scope of such consent and recordings of the calls are necessarily embraced by the pleadings and may be properly considered by the Court in considering this motion.

This call was disconnected during the attempted transfer. *Id.* Notably, at no point during this interaction did Morris ever state that he wished not to be contacted by CarShield.

Five minutes after this disconnection, Morris placed two outbound calls to CarShield. Both calls were disconnected upon answering. Immediately following these two disconnected inbound attempts by Morris, CarShield placed another outbound call to Morris, but was again disconnected upon transfer to the sales representative. A true and accurate recording of this interaction, and a transcript thereof, is attached hereto as **Exhibit 6** and **Exhibit 7**, respectively. Again, at no point during this call does Morris ever say anything about revoking consent to be contacted. *Id.*

Upon disconnection, CarShield attempted to reconnect with Morris twice more—each attempt lasting approximately 1 second prior to suddenly disconnecting. After October 27, 2024, CarShield made no more attempts to contact Morris. Plaintiff, however, didn't stop. He attempted called CarShield several more times. On October 28, 2024, Morris called CarShield, but disconnected upon CarShield answering. Morris again attempted to call CarShield twice more on November 13, 2024, however, at this point CarShield had blocked Morris' number given the nature of his repeated disconnect activity.  A true an accurate call log of all the inbound and outbound calls reflecting the calls alleged in the complaint is attached as **Exhibit 8.**

As is evident from the calls themselves, Morris only received calls from CarShield because he expressly requested them. CarShield's initial interaction with Morris specifically indicated that it was in response to the information Morris requested. (*See* Ex. Nos. 2 & 3, at 0:26–0:33 ("calling regarding the information ***you requested*** …")) Morris also subsequently acknowledged the accuracy of the information he provided in that request, and at no point ever indicated that he did not want to be contacted, or otherwise revoke his prior express and written consent. (*See* Ex. Nos. 4 & 5, at 0:01–0:20)

### III.   LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must set forth "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (quotation omitted). Complaints that merely state "labels and conclusions" or make "naked assertion[s]" without "further factual enhancement" do not meet this pleading standard. *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 127 S. Ct. at 1965. Rather, complaints which "le[ave] open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery" are insufficiently plead. *Id.* at 1968 (citation omitted).

When considering a motion to dismiss under Rule 12(b)(6), courts generally may not consider materials outside the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). However, "it may consider some material that are part of the public record or do not contradict the complaint," as well as materials that are "necessarily embraced by the pleadings." *Id*. Documents embraced by the pleadings include documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Kushner v. Beverly Enters., Inc.,* 317 F.3d 820, 831 (8th Cir. 2003); *see also Zean v. Fairview Health Servs.,* 858 F.3d 520 (8th Cir. 2017) (holding that a "Complaint [which] alleged in conclusory fashion that [plaintiff] did not give [defendant] express consent to make the calls" necessarily embraced purported "documents reflecting the contractual relationship that refute[ed] this conclusory allegation.").

Case: 4:25-cv-00441-SEP    Doc. #: 9    Filed: 06/23/25    Page: 5 of 11 PageID #: 43


Audio recordings which are embraced by the complaint, incorporated by reference, or integral to the claim, may be properly considered by the Court on a Rule 12(b)(6) motion. *See Doe v. Innovate Fin.,* No. 21-1754, 2022 WL 673582 at *1 n.3 (D. Minn. Mar. 7, 2022) ("While the recording of the phone call was not submitted with the Complaint, it can properly be considered by the Court on the motion to dismiss as it is necessarily embraced by the Complaint. The Complaint mentions the phone call and the recording of it and discusses what transpired during the call."); *see also Steinhoff v. Star Trib. Media Co., LLC,* No. 13-CV-1750 SRN/JSM, 2014 WL 1207804 at *2 (D. Minn. Mar. 24, 2014) (considering telephone call recording and consent form in dismissing a TCPA complaint under Rule 12(c)). Courts in this district have similarly considered audio/video recordings of underlying events at the Rule 12 stage, for recordings that are "undisputed, central to the case, and entirely inconsistent with the plaintiff's allegations." *See Jackson v. Brooklyn Ctr.,* No. 21-CV-2072 (SRN/DJF), 2023 WL 2368032 at *5 (D. Minn. Mar. 6, 2023), aff'd sub nom. Jackson v. City of Brooklyn Ctr., No. 23-1678, 2023 WL 6876550 (8th Cir. Sept. 28, 2023) (collecting cases).

## IV.    ARGUMENT

Plaintiff alleges violations of the national and internal do-not-call provisions of the TCPA, and its implementing provisions. (Dkt. 5 at ¶¶ 11–12.) Thereunder, a defendant is liable when it makes more than one telephone solicitation within a twelve-month period to a number registered with the national do-not-call registry. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)–(d). However, such calls do not run afoul of the TCPA where they are made with the "prior express consent" of the called party. 47 C.F.R. § 64.1200(f)(15).

Crucially, a "telephone solicitation" is defined, in relevant part, as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment

in, property, goods, or services, which is transmitted to any person, but *such term does not include a call or message: (i) to any person with that person's prior express invitation or permission* […]". 47 C.F.R. § 64.1200(f)(15). A caller may obtain an individual's "prior express invitation or permission" through a "signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed." 47 CFR § 64.1200(c)(2)(ii).[2]

This is exactly what happened here.

### A.  The Complaint Embraces Evidence of Morris' Consent and Recordings of the Phone Calls

Plaintiff's complaint identifies Morris' telephone conversations with CarShield in their complaint, discusses what transpired during the call, and can be properly considered by the court on a motion to dismiss. (*See Innovate Fin.,* No. 21-1754, 2022 WL 673582 at *1 n.3 (D. Minn. Mar. 7, 2022)) Plaintiff alleges the content of these calls as being integral to the assertion that CarShield has violated the TCPA, and the issue of consent and Plaintiff's alleged revocation of consent, is raised throughout the Amended Complaint. (*See, e.g,* Dkt. 5 at ¶¶ 24, 32–36 ("Plaintiff responded during multiple of the calls that he was not interested and to stop calling;" "Plaintiff revoked his consent to receive the calls, but the calls continued in retaliation for daring to ask they stop")).

Recordings of the telephone conversations which the Plaintiff expressly relies upon, and documents bearing on the scope of such consent, are thus necessarily embraced by the pleadings and may be properly considered by the Court in considering this motion. This approach is compatible with the Eighth Circuit's decisions in *Zean* and *Steinhoff*.

---

[2] Even if the Court views prior express consent as an affirmative defense, such a defense can still provide the basis for dismissal for failure to state a claim or judgment on the pleadings if it is apparent on the fact of a complaint. *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012).

In *Zean*, the Court granted a TCPA defendant's motion to dismiss, which like here, raised an attack on a complaint which alleged in conclusory fashion that the plaintiff did not give their express consent to receive certain calls. 858 F.3d at 526–27. The district court in *Zean* dismissed the action after considering two exhibits showing the plaintiff's express prior written consent arising from a contractual relationship, in which the plaintiff agreed to receive the very calls for which their complaint was premised. *Id.* In part, the district court determined that "the fact of consent may be inferred from the allegations in the Complaint" because the probability that defendant would begin calling plaintiff without the plaintiff having first given defendant their phone number "is remote." *Zean v. Fairview Health Servs.*, 149 F. Supp. 3d 1129, 1133–34 (D. Minn. 2016), aff'd, 858 F.3d 520 (8th Cir. 2017). Because the Court inferred that the plaintiff had provided their cell phone number based on the factual allegations in the complaint, the exhibits were necessarily embraced by the pleadings, and were fatal to the plaintiff's claims. *Id.*

Similarly, in *Steinhoff*, the parties disputed whether a newspaper subscription order form and an audio recording of a phone conversation between the parties was necessarily embraced by the pleadings. No. 13-CV-1750 SRN/JSM, 2014 WL 1207804 at *2 (D. Minn. Mar. 24, 2014). The *Steinhoff* plaintiff did not mention the order form in her initial complaint, but did mention that she had purchased a subscription from the defendant in the past. The court found that both the order form and the audio recording were embraced by the pleadings because (1) "[t]he parties d[id] not contest that the terms of Plaintiff's subscription form the basis of this dispute, and paragraph 12 of [] the Complaint refers specifically to that subscription" and (2) "the Complaint references the very telephone conversation [ ] which was recorded on the disk provided to the Court."

As the complaint notes, calls to the phone number beginning with (636) XXX-XXXX are the sole basis by which Morris makes his allegations. (*see* Dkt. 5 at ¶ 16) Plaintiff alleges that

Morris "received at least 7 calls from the Defendant's telephone numbers in less than an hour span" on October 27, 2024, and even "responded during multiple of the calls that he was not interested and to stop calling." (Dkt. 5 at ¶¶ 20–25)

Plaintiff relies on these assertions in asserting that the calls were unwanted, and in violation of the TCPA. Like a plaintiff that invokes the content of a contract, but fails to include the contract in their complaint, Morris is embracing the content of these calls by relying upon them, making the calls integral to his claim, and incorporating them by reference. Thus—like the call in *Steinhoff* evidencing the plaintiff's lack of revocation in direct contradiction to the complaint—recordings of Morris' calls are necessarily embraced by the complaint, and should be considered by the Court when determining whether Plaintiff has sufficiently stated a claim under the TCPA.

CarShield confirmed Morris' consent in its voicemail indicating that CarShield was following up on the "information [Morris] requested," consistent with Morris's first providing that contact information to CarShield. (*See* Ex. Nos. 2 & 3, at 0:25–0:44). Morris subsequently verified the vehicle information he provided online—expressly confirming (1) the make and model of his Vehicle; (2) his zip code; (3) the number of miles on the Vehicle; (4) the fact that the Vehicle had no check engine light warnings and was not leaking fluid; and (5) that the Vehicle was otherwise running well overall. (*See* Ex. Nos. 4 & 5, at 0:01–0:20)

CarShield could not magically have Morris's name, email, make and model of his Vehicle, mileage of that Vehicle, and zip code (all of which Morris verified and confirmed), without first being provided that information from Morris. (*Id.; see also* Ex. 1) This information entirely tracks, and is consistent with, the information request form Morris filled out on October 26, 2024 when he requested a free quote on a VSC and expressly "submit[ed] this form so that CarShield will contact [him] quickly by phone, text, and/or e-mail to discuss [the Vehicle]." (*See* Ex. 1)

8

But that isn't all. Plaintiff not only never rescinds his consent as the call recordings show, but on five separate occasions he actually called CarShield himself—all while speaking as if he was an interested customer. The only calls ever made to Morris were all made on October 27, 2025— the day after Plaintiff submitted an information request to CarShield. (*See* Ex. 8) That morning, CarShield left a voicemail indicating they were following up on Morris' information request on the second attempt to reach him, and on the third attempt Morris answered. (*See* Ex. Nos. 2 & 3, at 0:25–0:44 (calling "regarding the information *requested* on your [Vehicle]"); Ex. 8). Rather than indicate any intent to revoke his consent to be contacted, he voluntarily confirmed the accuracy of his Vehicle's information, just as he submitted it, and this is all on recording. (*See* Ex. Nos. 4 & 5, at 0:01–0:20)

After being disconnected, Morris actually contacted CarShield *twice* at 11:41 a.m.—each call within 1 minute of each other in what appears to be an attempt to reestablish connection with CarShield's sales representative. (*See* Ex. 8) To follow-up on Morris' attempts, CarShield again made three outbound calls: one which was answered but again disconnected during transfer, and twice more to reestablish connection. (*Id.*) Thereafter, CarShield never made any attempts to contact Plaintiff. Morris on the other hand, would continue to call CarShield three more times on October 28, 2024 and November 13, 2024 (*Id.*)

Under these circumstances, it is entirely reasonable for this court to infer that Morris first provided his phone number to CarShield, and documents evidencing the consent form he executed while doing so, and the recordings of the actual calls, may be considered for purposes of Rule 12(b)(6).

…

…

**B.    Plaintiff has Failed to State a Claim Under the TCPA, Because Plaintiff Provided His Prior Express and Written Consent**

As is apparent from the documents necessarily embraced by Plaintiff's Amended Complaint, CarShield only initiated contact with Morris after he provided his prior express written consent to receive calls from CarShield about his Vehicle. (*See* Ex. Nos. 2 & 3, at 0:25–0:44 (calling "regarding the information *requested* on your [Vehicle]"))

Morris provided a signed, written agreement, between CarShield and Plaintiff, which expressly requested CarShield to contact Plaintiff at the telephone number he provided and precludes recovery under the TCPA. *See* 47 CFR § 1200(c)(2)(ii). Specifically, Morris (1) filled out the online request for VSC information; (2) authorized CarShield to contact him by phone, text, and/or email to discuss his Vehicle via the written consent form; and (3) provided CarShield with his cellular telephone number and email address, so that CarShield could reach him. (*See* Ex. 1 ("I am completing and submitting this form so that CarShield will contact me quickly by phone, text, and/or e-mail to discuss my vehicle"). Moreover, Plaintiff never once revoked his consent to receive calls from CarShield prior to CarShield blocking Morris' phone number on November 11, 2024. To the contrary, he confirmed the very information he submitted to solicit the calls. (*See* Ex. Nos. 4 & 5, at 0:01–0:20) As the Court can clearly hear from the audio recordings of these calls, at no point did Morris "respond[] during multiple of the calls that he was not interested and to stop calling." (Dkt. 5, at ¶ 24).

The calls Plaintiff complains of are not actionable. They were specifically solicited by Morris. Morris requested to receive them, consented to them, and never revoked that consent. This specific request of CarShield necessitates dismissal of Plaintiff's complaint.

…

…

10

IV.    **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the

Complaint, award Defendant's costs to the fullest extent permitted by law, and grant Defendant

such further and additional relief as the Court deems just and proper.

Respectfully submitted this 23rd day of June, 2025

**DICKINSON WRIGHT, PLLC**


By:    s/Jeffrey H. Kass
Jeffrey H. Kass, No. 46800
1125 17th Street, Suite 550
Denver, CO 80202
Tel: (303) 723-8400
Fax: (844) 670-6009
Email: JKass@dickinson-wright.com

*Attorneys for Defendant*


**CERTIFICATE OF SERVICE**

This document was served via the court's efiling system to all counsel of record on this
the 23rd day of June, 2025.

s/ Jeffrey H. Kass
Jeffrey H. Kass


4904-9151-7001 v7 [105444-68]

11