**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| BOBBY MORRIS, individually and on behalf of all others similarly situated, | Case No.   4:25-cv-00441 |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| NRRM, LLC d/b/a CarShield | |
| Defendant. | |

## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls-3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020). The TCPA also restricts calls made to numbers on the National Do Not Call Registry.

"The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's

web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

This case is no different. The Plaintiff alleges a straightforward claim based on his receipt of several unsolicited telemarketing calls, as well as a claim that he received calls after he attempted to make an opt-out request. Like nearly every other Court to consider the issue, the Plaintiff has plainly and unequivocally alleged, and supported that through the affidavit herein, that (a) he did not consent to receive any of the solicitations at issue, (b) that he attempted to get the calls to stop, including by calling CarShield to get the multiple calls it placed within the span of an hour to stop to no avail, and (c) received the attached taunting response from Defendant's "customer relations" department as a result of his Do Not Call claim. Those are unquestionably disputed facts that do not warrant dismissal at the pleadings stage. Defendant's affirmative

defense of consent is just that: an affirmative defense that should be decided at jury trial. This matter should continue to discovery and the Defendant's motion to dismiss should be denied.

## FACTUAL BACKGROUND

The Plaintiff filed the instant complaint alleging violations of the Telephone Consumer Protection Act for unsolicited calls which Defendant placed to his number on the National Do Not Call Registry, including after he had had attempted to opt out, and after he wrote letters seeking the same. The Defendant has filed a Motion to Dismiss. This response follows.

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

## ARGUMENT

### A.  The Plaintiff states a claim for receiving a call without consent.

"The Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, she can add her number to the list. The TCPA then restricts the telephone solicitations that can be made to that number." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019), *cert. denied, DISH Network L.L.C. v.*

*Krakauer*, 140 S. Ct. 676 (2019). The relevant statute, 47 U.S.C. § 227(c)(5), prohibits violating any of the TCPA's implementing regulations. The relevant regulation here, 47 C.F.R. § 64.1200(c)(2), provides that "No person or entity shall initiate any telephone solicitation to: A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."

The regulation further provides that "Any person or entity making telephone solicitations (or on whose behalf telephone solicitations are made) will not be liable for violating this requirement if: It has obtained the subscriber's prior express invitation or permission. Such permission must be evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed." 47 C.F.R. § 64.1200(c)(2)(ii). Simply put, the regulation provides an *affirmative defense* of consent and does not permit this Court to adjudicate disputed issues of consent, as here, at the pleadings stage.

Though Mr. Morris' complaint is straightforward, it articulates far more than a threadbare legal conclusion. The complaint unequivocally states that "the Plaintiff did not ask for the calls" and went so far as to send "a letter to the Defendant regarding the receipt of the unwanted calls to ascertain why he received them." Instead of asserting, as it does here, that Mr. Morris allegedly visited CarShield's website and submitted his information in response to that correspondence, the Defendant instead responded "with a handwritten response scrawled in Sharpie and highlighted, 'WE DISAGREE SEND US A COPY OF THE COMPLAINT YOU PROPOSE TO FILE AGAINST US AND WE WILL ASSESS <u>X PUBLIC RELATIONS</u>.'" (Compl. ¶ 25, 26). A true and correct copy of that correspondence is attached herein as Exhibit B. If there was any doubt, the

Complaint further makes clear, "Plaintiff never provided his consent or requested these calls," "never signed up as an initial matter to receive calls from the Defendant," and that the "calls were non-consensual encounters." (Compl. ¶ 32, 34, 36). To the extent that the Defendant posits some factual dispute as to whether the Plaintiff consented based on the Exhibit it provides, that disputed factual question will need to be addressed at a jury trial, not a motion to dismiss.

Simply put, Mr. Morris is not required to plead the lack of prior express consent, which has been universally recognized as an affirmative defense under the TCPA. As the Eighth Circuit has noted, the FCC ruled that "if any question arises as to whether prior express consent was provided by a call recipient, the burden is on the caller to prove that it obtained the necessary prior express consent." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 523 (8th Cir. 2017). Because Plaintiff has pled the *absence* of consent, he has stated a valid claim at the pleadings stage. *Id.* Plaintiff plainly alleges that the calls were made without consent, unwelcomed, and did not come as a result of his invitation or request to be contacted, as outlined above.

"Express consent is an affirmative defense on which the defendant bears the burden of proof." *Blow v. Bijora, Inc.*, 855 F.3d 793, 803 (7th Cir. 2017). A court will only grant a motion to dismiss based on an affirmative defense where the plaintiff has pleaded all elements of the affirmative defense in her complaint. *See, e.g.*, *Franklin v. Depaul Univ.*, No. 16 C 8612, 2017 WL 3219253, at *4 (N.D. Ill. July 28, 2017) (denying a motion to dismiss where, as here, the complaint stated that the plaintiff never provided his phone number to the defendant or gave prior consent to be called); *Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 WL 3056813, at *4 (N.D. Ill. July 7, 2014) (rejecting the defendant's prior express consent defense because the court was required to take the plaintiff's allegation that he did not consent to automated calls as true for purposes of the motion to dismiss).

Mr. Morris' complaint makes no concession that he provided his prior express written consent to receive telemarketing calls. To the contrary, as his complaint makes clear, and as further evidenced by his own Declaration[1], Mr. Morris very much disputes the purported website visit through which his information was obtained and unequivocally denies having submitted any of his information to receive calls from CarShield. Moreover, Mr. Morris denies any relationship with CarShield. Despite the fact that Mr. Morris is not required to plead the lack of the Defendant's affirmative defense nor plead around it, he has nonetheless done so.

Defendant also relies on an unauthenticated purported website visit to claim it had consent. This claim fails for several reasons. First, Mr. Morris did not visit the website in question, as confirmed through his Complaint, Declaration, and as discovery will reveal. It also bears mentioning that information purportedly submitted to the website is simply incorrect biographical information about Mr. Morris and his car; for example, the alleged mileage on Mr. Morris' car is nowhere near its actual milage. Of course, Mr. Morris cannot be found to have provided his prior express written consent if he did not provide his phone number on that website. But even at the pleadings stage, serious issues exist surrounding the Defendant's purported website submission because it originated *from an internal IP address*; that is, the purported consent originated from *within the CarShield organization itself*, and not from anyone else on the internet, let alone Mr. Morris.

As the Plaintiff also alleges, the Plaintiff believes that the "Defendant appears to simply have retaliated against the Plaintiff by calling him more and continuing to call him. (Compl. ¶ 24). So much is evident in that the *very IP address* from which the Defendant claims to have

---

[1] Defendant might contend that the inclusion of Mr. Morris' declaration is inappropriate at the 12(b)(6) stage, but the inclusion of the declaration is appropriate here because it addresses the very matters that the Defendant contends are "necessarily embraced by the pleadings," that is, the putative website visit, and to show that there exists a genuine dispute as to the authenticity of this visit. *See Zean*, 858 F.3d at 523.

"[captured] IP consent," Def.'s Ex. 8, ECF No. 9-13, PageId # 77, is *Defendant CarShield's IP address*, not the Plaintiff's. Public records reveal that the IP address that purportedly submitted the opt in is fde4:8dba:2000:1ee1:6b20:100:a6e:4, but this is a *unique local address* that would have been unique to CarShield's network. R. HINDEN & B. HABERMAN, UNIQUE LOCAL IPv6 UNICAST ADDRESSES (RFC 4193) sec. 3 (October 2005), https://datatracker.ietf.org/doc/html/rfc4193#section-3. As the standard itself makes clear, "these addresses are not expected to be routable on the global Internet." *Id.*

According to the standards for the IPv6 protocol itself, IPv6 Unique Local Addresses are reserved under the "fc00::/7 prefix." This means that any address starting with the hexadecimal values fc through fd falls within this block.[2] The address at issue here, which begins with fde4, starts with fd, which places it squarely within this reserved private rage. As such, under RFC 4193 §3, this address is not publicly routable and is intended solely for private internal use. As the relevant network specification makes clear, the purported opt-in this must have originated from *within CarShield's own network* and cannot have originated from the internet because such address is not routable on the internet, and thus certainly not from Mr. Morris, who has no dealings with CarShield. Put differently, far from a "written solicitation he made to CarShield," Br., ECF No. 9 at PageID # 39, CarShield's claim is akin to having received a letter from Mr. Morris sent from Missouri to an uninhabited island with no postal services to speak of. One cannot submit information where no one exists to receive it, and here, no infrastructure existed to receive Mr. Morris' purported opt-in from the global internet.

---

[2] Understanding this proposition requires a basic understanding of hexadecimal and binary values. In plain English, the term "fc00::/7" instructs the reader to look at the first 7 bits of binary data of the address to determine if they equal 1111 110 in binary code. In binary code, each hexadecimal digit uses some combination of four "1s" or "0s" to represent that letter. Each letter comprises 4 bits in binary. The letter "f" is binary 1111. The letter "c" is 1100 in binary, and the letter "d" is 1101 in binary. Thus, both "fc00" and "fde4" have their first 7 bits (i.e. "fc" and "fd") as 1111 110 in binary. *See Hex to Binary Converter*, RAPIDTABLES, https://www.rapidtables.com/convert/number/hex-to-binary.html?x=fde4 and https://www.rapidtables.com/convert/number/hex-to-binary.html?x=fc00.

And legally, far from being apparent on the face of the complaint that the Plaintiff consented, *C.H. Robinson Worldwide, Inc. v. Lobrano*, here, the Plaintiff has materially disputed that he consented to the subject communications. 695 F.3d 758, 764 (8th Cir. 2012). And although the Plaintiff's factual allegations contained in his Complaint are entitled to the presumption of truth at the pleadings stage, the Plaintiff here has submitted a Declaration and this additional analysis of the Defendant's own records to show why the Plaintiff could not possibly have submitted the information alleged on the Defendant's website. To this end, *Zean* actually supports the Plaintiff, not the Defendant. There, the District of Minnesota granted a motion to dismiss where a hospital patient denied having consented to receive calls from the hospital, and where the hospital presented a "consent form and a questionnaire" indicating that the Plaintiff had consented to receive calls. *Zean v. Fairview Health Servs.*, 149 F. Supp. 3d 1129, 1133 (D. Minn. 2016), *aff'd*, 858 F.3d 520 (8th Cir. 2017). However, there, unlike here, "Zean concedes in the Complaint that he had a preexisting relationship with Fairview that related to the phone calls at issue." *Id.* Unlike in *Zean*, not only did Mr. Morris not have a relationship with CarShield, he has sworn to the same in a declaration. Nevertheless, despite the undisputed fact that a relationship existed in that case (the same relationship Plaintiff denies here), the plaintiff in *Zean* protested the introduction of documents at the pleadings stage which bore on and supported that very conceded allegation. That is plainly not the case here, where the Plaintiff expressly denies having wanted the calls and having any relationship with CarShield whatsoever, let alone access to its internal systems to attempt to submit an opt in with his information.

A divided Eighth Circuit in *Zean* recognized as much, realizing that the plaintiff disputing the authenticity of his medical forms because they were partially redacted to protect the plaintiff's medical records, while at the same time conceding that he was the defendant's patient,

was a "bogus issue." *Zean*, 858 F.3d at 527. At least part of the Eighth Circuit's decision in that case, as well as that of the District Court, was premised on the fact that the plaintiff there did not dispute that he was a customer of the defendant, that he had sought care and made a purchase from the defendant, and further that he did in fact sign some sort of contract with the defendant, but disputed that the contract presented was the one he signed. Here, far from being "bogus," the Plaintiff has demonstrated how the Defendant's *own evidence* belies its contention that the Plaintiff's IP address was "verified" or that he visited the Defendant's website and submitted his information from the internet. *See id.* at 529 (Kelly, J., dissenting, and crediting the plaintiff's plainly pled authenticity dispute and reasoning that "Assuming a contract between Fairview and Zean regarding his 2014 purchase is necessarily embraced by the pleadings, the court has no evidence aside from Fairview's affidavit that these heavily redacted exhibits are that contract."). Because the Plaintiff has expressly *denied* being the defendant's customer or submitting any information, there is far from a "bogus" dispute as to the authenticity of the purported consent.

Indeed, this case is far more analogous to *Soular v. N. Tier Energy LP*, a case distinguished by the *Zean* court. There, the court denied a motion to dismiss where the defendant claimed that the Plaintiff consented to receive the subject text messages because he sent the defendant a text message from his phone. No. 15-CV-556 SRN/LIB, 2015 WL 5024786, at *4 (D. Minn. Aug. 25, 2015). The Court refused to consider the defendant's disputed affidavit and further held that the allegations were insufficient to infer that simply sending a message to the defendant constituted consent to receive further messages from the defendant. *Id.* at *3, *5. Indeed, it is questionable as to whether the purported consent evidence is even embraced by the pleadings at all, insofar as the Plaintiff denies having submitted such evidence and does not explicitly mention a website submission anywhere in her complaint. *Steinhoff v. Star Trib. Media*

*Co., LLC*, No. 13-CV-1750 SRN/JSM, 2014 WL 1207804, at *2 (D. Minn. Mar. 24, 2014). In

any event, unlike there, the Plaintiff expressly *denies* having had any relationship with the

Defendant, unlike there, where the plaintiff admittedly placed an order for the newspaper. *Id.*

> As the Eastern District of Arkansas succinctly explained, exactly as pertinent here:

> In *Zean*, the Eighth Circuit was quite clearly, and quite correctly, focused on the alleged prior contractual relationship between the parties. . . . The case at bar is different from *Zean* in a critical way. Ms. Shears-Barnes did not allege any pre-existing relationship with Acurian, much less a contractual one. Nothing in her Complaint indicates previous engagement or interaction with Acurian. Indeed, the exact opposite is true. . . . The lack of any alleged prior relationship between Ms. Shears-Barnes and Acurian is what distinguishes our case from *Zean*; it is what makes the Declaration and exhibits submitted with the pending Motion to Dismiss unlike the "contractual documents" about "a contractual relationship" considered in *Zean*." . . . Acurian's read of *Zean* is too broad. If the materials submitted by Acurian fall into the *Zean* exception merely because they contradict Ms. Shears-Barnes's allegation of non-consent, then the *Zean* exception would swallow the general rule limiting district courts to consideration of the pleadings when resolving a motion to dismiss. On my read of *Zean* and its antecedents, the materials at issue in the case at bar are not "necessarily embraced by the pleadings." Nor do they fall into some other exception to the general rule.

*Shears-Barnes v. Acurian, Inc.*, No. 4:20-CV-00161-LPR, 2021 WL 1201671, at *4 (E.D. Ark.

Mar. 29, 2021). Defendant here commits the same error as did the defendant in that case, by

contenting that the evidence it has submitted falls under *Zean* merely because it contradicts the

Plaintiff's pled allegations of non-consent in his Complaint.

Rule 12(b)(6) is not permissive. It states: "If, on a motion under Rule 12(b)(6) or 12(c),

matters outside the pleadings are presented to and not excluded by the court, the motion *must be*

treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d) (emphasis added);

*see also BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 688 (8th Cir. 2003) (finding error

in district court's consideration of documents outside the pleadings where the documents "may

or may not be the only legal agreements relevant to [the plaintiff's] alleged contract with [the

defendant]," and "the documents provided by [the defendant] were neither undisputed nor the

sole basis for [the plaintiff's] complaint"). That being the case here, the Court should deny the Defendant's motion on this basis and permit this case to proceed to further discovery as disputed issues exist, warranting denial under the summary judgment standard.

**B.  The Plaintiff states a claim for the TCPA's internal Do Not Call Provisions.**

Mr. Morris' conduct on the calls accounts for little, either. As an initial matter, the Plaintiff received an inordinate number of calls in the span of an hour. As Mr. Morris explains, during the calls that he did answer, he played along with the caller's script in an attempt to ascertain who was calling him illegally, and was further in the middle of calling the Defendant to lodge a do not call request when Defendant called him. The Defendant is also simply incorrect that the Plaintiff did not ask for the calls to stop – he placed his number on the National Do Not Call Registry, that's the entire point of the Registry. Had the call proceeded, the Plaintiff would have lodged a Do Not Call request and explicitly called the number back in an attempt to do so, only to not be connected to anyone. Nevertheless, he was prevented from doing so because CarShield appears to have blocked his number, admits that it blocked his number at some point, and sent a vituperative response to his letter inquiring as to why he received illegal calls.

Moreover, conducting an investigation into who illegally called a recipient, especially when the caller has not identified themselves, has been applauded by courts around the country. Indeed, the Federal Trade Commission, which is charged with enforcement of federal telemarketing laws, regularly has investigators pose as potential customers. *See, e.g.,* Consent Decree, *United States v. Credit Bureau Collection Services*, No. 2:10-cv-169, Doc. No. 3, § X (S.D. Oh. Feb. 24, 2010) (authorizing FTC to use "lawful means," including "posing as consumers and suppliers" in order to monitor and investigate compliance with federal law).  TCPA plaintiffs are permitted to engage in the same conduct, as another Court has held:

11

> Cognizant of how damaging Mey's evidence is, Defendants disparage her as a "professional litigant" who "earns her living by selling things on eBay and by being a plaintiff in class action TCPA lawsuits." 12/14/15 Tr. at 41. (They neglect to mention that she is also supported by her spouse. Doc. 100-3 at 5-6.) According to Defendants, Mey's statements should be ignored because she often misrepresented to telemarketers that the name "Lifewatch" appeared on her caller identification in order to elicit their connection to Lifewatch. Doc. 100 at 16. But the telemarketers' admissions are not rendered invalid just because Mey (successfully) tricked them into (truthfully) revealing that they sold products for Lifewatch.

*FTC v. Lifewatch Inc.*, 176 F. Supp. 3d 757, 771 (N.D. Ill. 2016). Private TCPA lawsuits are not treated any differently – posing as an interested consumer is an approach endorsed by Courts in order to ascertain the identity of the calling party and hold them responsible. It doesn't lend itself to some untoward inference that the calls were somehow wanted.

On the foregoing facts, the Plaintiff plainly alleges a violation of 47 C.F.R. § 64.1200(d)(3), in that he was precluded from making an internal do not call request and in fact called in the absence of proper procedural safeguards to prevent such calls. Simply put, it stretches the boundaries of logic and common sense, as an initial matter, to think that a company would have proper policies and procedures in place for the maintenance of an internal do not call list when the Plaintiff alleges both that he was *precluded from making such request* because he was either (a) hung up on, (b) prevented from calling back and not having his calls connected to anyone, and (c) received the vituperative letter response reproduced herein as Exhibit B. This is not to mention Defendant's borderline harassing conduct of calling the Plaintiff incessantly, at a rate more than once every ten minutes.

Because the Defendant blocked the Plaintiff's number and did not connect the Plaintiff to a CarShield representative so that he could lodge an opt-out request, CarShield has explicitly violated the plain text of the statute in this regard. 47 C.F.R. § 64.1601(e); § 64.1601(e)(3) (requiring the provision of a telephone number that an individual can call to lodge a "do-not-call

request during regular business hours."). CarShield's opt-out mechanism is legally deficient. This is not to mention the fact that Mr. Morris tried to call the number that called him illegally back in order to lodge a do not call request but could not get through. By definition, a company cannot have adequate policies and procedures in place for the maintenance of an internal do not call list *if the company's own processes do not comply with the law*, as plainly pled in the Complaint. Defendant's own violation of 47 C.F.R. § 64.1200(d)(3) ascertainable from the text of the Complaint. Moreover, such facts give rise to the plausible inference that Defendant lacks adequate policies and procedures for the maintenance of an internal Do Not Call list.

The TCPA permits a consumer to revoke any purported consent to receive calls "at any time" and "through any reasonable means." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135, Declaratory Ruling and Order, 30 FCC Rcd 7961, 7993-99, paras. 55-70 (2015). As a result, a consumer "may revoke his or her consent in any reasonable manner that clearly expresses his or her desire not to receive further calls, and that the consumer is not limited to using only a revocation method that the caller has established as one that it will accept." *Id.* at 7998-99, para 70.

One would hardly question that calling a number back intending to make a do not call request and then not being able to make such a request is unquestionably sufficient. The applicable regulation, 47 C.F.R. § 64.1200(d)(3), can be violated either by (1) refusing to place a plaintiff's number on an internal do-not-call list, or (2) calling a number, despite it being on an internal do-not-call list. *See Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175, 1184 (D. Utah 2021). There can be no question that Defendant refused, including as referenced through its letter reply.

The Plaintiff has demonstrated that the Defendant lacks sufficient policies and procedures, at the pleadings stage, to avoid placing calls to persons like Plaintiff who would have

asked not to receive them. In *Simmons v. Charter Commc'ns, Inc.*, for instance, at summary judgment, the Defendant adduced evidence showing that it effectuated the Plaintiff's internal do not call request, and the Court explicitly noted that, analogous to the circumstances here, that "[t]he existence of a single failure to record and honor an individual's request to be placed on a DNC list can be evidence of a failure to implement proper procedures." 222 F. Supp. 3d 121, 139 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017). The Plaintiff pleads nearly identical facts here at the pleadings stage to allow the Court to infer that the Defendant failed to "record and honor" the Plaintiff's do not call request because *the Defendant sent a letter refusing to honor the request* and *blocked the Plaintiff's number* from making such a request. In *Buja v. Novation Cap*, for example, the Court held that a claim similar to that here would survive a motion to dismiss and for summary judgment. *Buja v. Novation Cap., LLC*, No. 15-81002-CIV, 2017 WL 10398957, at *5 (S.D. Fla. Mar. 31, 2017). As it relates to the claim asserted here, the *Buja* court noted as sufficient the allegations the defendants called persons who asked to be placed on the do-not-call list and that "Defendants did not have reasonable practices and procedures in place to effectively prevent telephone solicitations . . .  as evidenced by its calls to Plaintiff who repeatedly requested Defendants stop calling." *Id.* Defendant is liable for violating 47 C.F.R. § 64.1200(d)(3), just as alleged in the Complaint.

## CONCLUSION

This Court must deny Defendant's motion to dismiss in its entirety. Alternatively, it should permit the Plaintiff to amend to correct the deficiencies as necessary.

RESPECTFULLY SUBMITTED AND DATED this July 20, 2025

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.
> E.D. Mo. # 333687PA
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, Pennsylvania 19038
> Phone: 215-225-5529 (CALL-LAW)
> Facsimile: 888-329-0305
> a@perronglaw.com

## **CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: July 20, 2025

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong