IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

BOBBY MORRIS, individually and on
behalf of all others similarly situated,

        Plaintiff,

v.

NRRM, LLC,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)

Case No. 4:25-cv-00441 -SPM

12-PERSON JURY DEMAND

**DEFENDANT NRRM, LLC d/b/a CARSHIELD'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant NRRM, LLC d/b/a CarShield answers Plaintiff Bobby Morris' Complaint as follows:

**PRELIMINARY STATEMENT**

This case is a classic abuse of process and attempted shakedown. Plaintiff Bobby Morris, a serial class action litigant, alleges that CarShield unlawfully initiated telemarketing calls to his personal cell phone in violation of the Telephone Consumer Protection Act *i.e.* "TCPA".

But here's Plaintiff's biggest problem: CarShield does not market through outbound dialing to unsuspecting consumers. CarShield relies solely on direct mail, television and radio advertisements, social media, and its own website to market its services. As a result, CarShield *only* calls a customer *after* that customer initiates contact with CarShield and requests a coverage quote through one of these marketing channels.

Plaintiff Morris, who filed six TCPA-related class action lawsuits in this district in 2025 alone, initiated the very calls for which he now complains. Using CarShield's online information request form, Morris voluntarily provided CarShield with his cell phone number, email, and

information about his personal vehicle, and expressly requested CarShield contact him regarding a free quote for a vehicle protection plan. When CarShield called to follow-up on Morris's own request for information about a plan, Morris then alleged that he was illegally contacted under the TCPA. This fabricated plot is just the latest in Morris' long line of attempts to extort money upon false pretenses and without any bona fide legal claim.

## I.    INTRODUCTION

1.    <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id* § 2(9)." Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 649 (4th Cir. 2019).

**ANSWER**:    Admits that is the nature of the action but denies liability and the underlying facts.

2.    "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone

2

solicitations that can be made to that number. *See id;*  16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . .  [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id.* at 649-50.

**ANSWER**:    This is a legal contention and not a short statement of fact to which a response is required. To the extent an answer is required, denies.

3.    Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls, to numbers on the National Do Not Call Registry, including his own.

**ANSWER**:    Admits that Plaintiff filed this action asserting two causes of action under the TCPA. Denies all remaining assertions, characterizations, and/or implications, if any.

4.    Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse,* Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

**ANSWER**:    Admits that Plaintiff filed this action as a purported class action suit. Denies

3

any and all remaining assertions, characterizations, and/or implications, if any, including that Defendant made or caused to be made any illegal telemarketing calls.

## II.    PARTIES

5.    Plaintiff Morris is an individual who resides in the Eastern District of Missouri, Eastern Division.

**ANSWER**:    Admits only upon information and belief.

6.    Defendant Carshield LLC is a Missouri corporation with its headquarters and principal place of business in Saint Peters, MO.

**ANSWER**:    Denies. CarShield LLC is not a party to this suit and has never been a functioning entity, and is not Defendant's company name. NRRM, LLC is the correct company name, whose principal place of business is in St. Charles Country, Missouri.

## III.    JURISDICTION AND VENUE

7.    Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiffs TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC, 565* U.S. 368,372 (2012).

**ANSWER**:    Admits.

8.    Personal Jurisdiction: This Court has general personal jurisdiction over Defendant because it is a Missouri corporation with its headquarters and principal place of business in this District

**ANSWER**:    Admits.

9.    Venue: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(l) because the Defendant is a resident of this District.

**ANSWER**:    Admits.

## IV.    FACTS

### A.    The Enactment of the TCPA and its Regulations

10.    In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

**ANSWER**:    Admits.

11.    Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(l).

**ANSWER**:    Admits except to the extent Plaintiff implies or states anything inconsistent with the law.

12.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

**ANSWER**:    Admits except to the extent Plaintiff implies or states anything inconsistent with the law.

13.    A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

**ANSWER**:    Admits except to the extent Plaintiff implies or states anything inconsistent with the law.

14.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf' such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**ANSWER**:   Admits except to the extent Plaintiff implies or states anything inconsistent with the law.

### B.       Unsolicited Telemarketing to Plaintiff

15.     Plaintiff Morris is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

**ANSWER**:   Admits, upon information and belief.

16.     Plaintiff Morris's cellular telephone number, (636) **XXX-XXXX,** is a telephone number that is used for residential purposes.

**ANSWER**:   Defendant possesses insufficient information to answer given the blocked out number and thus denies.

17.     Plaintiff Morris uses the telephone number for his own personal, residential, and household needs and reasons.

**ANSWER**:   Defendant possesses insufficient information to answer and thus denies.

18.     The number is a residential telephone line because it is assigned to a telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

**ANSWER**:   Defendant possesses insufficient information to answer and thus denies.

19.     Plaintiff Morris's number has been on the National Do Not Call Registry since he registered it on the Registry on July 27, 2018, well prior to receiving the calls at issue.

**ANSWER**:   Admits upon information and belief as to when registered on the Do Not Call Registry. Denies the remaining allegations.

20.     Despite that, Mr. Morris received at least 7 calls from the Defendant's telephone numbers in less than an hour span, between 10:43 AM and 11:45 AM, local time, on October 27, 2024.

6

**ANSWER**:    Denies.

21.    The calls came from the caller IDs 636-245-5324, 636-228-6838, 636-626-2144, 636-542-6166, and 636-542-5798.

**ANSWER**:    Admits those are numbers owned by CarShield and called Morris from them.

22.    The calls all were sent to advertise CarShield's goods and services.

**ANSWER**:    Calls are not sent, but admits that Defendant called to provide Morris with the CarShield protection plan quote he asked for.

23.    The individuals on the other line all stated that they were calling from CarShield, and were trying to sell the Plaintiff a CarShield warranty for his car.

**ANSWER**:    Admits, except not with the precise language used in this allegation, which is denied.

24.    The Plaintiff responded during multiple of the calls that he was not interested and to stop calling, but the Defendant appears to simply have retaliated against the Plaintiff by calling him more and continuing to call him.

**ANSWER**:    Denies.

25.    The Plaintiff did not ask for the calls.

**ANSWER**:    Denies.

26.    In fact, the Plaintiff sent a letter to the Defendant regarding the receipt of the unwanted calls to ascertain why he received them. In response, he received the letter reproduced on the following page (from which Plaintiffs counsel has redacted Plaintiff's home address),  with a handwritten response scrawled in Sharpie and highlighted, "WE DISAGREE SEND US A COPY OF THE COMPLAINT YOU PROPOSE TO FILE AGAINST US AND WE WILL ASSESS X PUBLIC RELATIONS."



11/2/2024

CarShield LLC
333 Mid Rivers Mall Dr
Saint Peters, Mo 63376
Attn: Mark Travis

Delivered via email

To Whom It May Concern; Mark Travis

I have afforded you ample time to respond to my previous correspondence, and you have chosen to ignore it, without an appropriate or acceptable response. I have enclosed a copy of my previous communication(s) for your review. Therefore;

Please consider this communication a formal notice of my intent to file a circuit against CarShield LLC for violations of state and/or federal telecommunications law(s) within 72 hours of delivery of this notice.

Please know that your continued failure to respond has been interpreted as an act of bad faith, and that I will make no further attempts at pre-litigation settlement beyond this notice. No settlement amount less than the full statutory damages, as well as any additional remedies as allowed by law, will be entertained once said suit is filed.

Moreover, please know that I fully intend to seek the full battery of available information available to me through lawful discovery, and that I will vigorously fight any attempt at sealing public court records that detail what I believe to be the illegal patterns and practices in the daily operations of your company. Finally, please know that any offer of non-disclosure will be off the table as part of any post-filing agreement as well.

Respectfully,

**Bobby Morris**

*(handwritten annotations across page):* WE DISAGREE SEND US A COPY OF THE COMPLAINT YOU PROPOSE TO FILE AGAINST US AND WE WILL ASSESS X public Relations

**ANSWER**:    Admits a letter was sent and that more information was initially requested in a note. Otherwise denies.

27.    Because they were sent to encourage the purchase of Car Shield's car warranty service contracts, the calls were telemarketing.

**ANSWER**:    Admits that calls made in response to Morris's inquiry were made to market CarShield plans over the phone. Otherwise denies.

28.    A reasonable seller would investigate into the reasons why they would be sending calls to numbers on the National Do Not Call Registry.

**ANSWER**:    Denies when a consumer expressly asks to be contacted.

29.    A reasonable seller would investigate into the reasons why the Plaintiff received seven calls he requested stop within the span of an hour.

**ANSWER**:    Denies, and further denies there were requests to stop. In fact, Morris called CarShield several times to the point that CarShield had to block Morris's number.

30.    A reasonable seller would investigate the Plaintiffs claims and letter, and not scrawl a vituperative response on the Plaintiffs correspondence in Sharpie and then proceed to highlight it.

**ANSWER**:    Denies.

31.    Plaintiffs privacy has been violated by the above-described telemarketing calls.

**ANSWER**:    Denies.

32.    Plaintiff never provided his consent or requested these calls.

**ANSWER**:    Denies.

33.    In fact, as illustrated above, the Plaintiff revoked his consent to receive the calls, but the calls continued in retaliation for daring to ask they stop.

**ANSWER**:    Denies.

34.    In fact, the Plaintiff never signed up as an initial matter to receive calls from the Defendant.

**ANSWER**:    Denies.

35.    The aforementioned calls that were sent to the Plaintiff were unwanted.

**ANSWER**:    Denies.

36.    The calls were non-consensual encounters.

**ANSWER**:    Denies.

37.    Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone storage space, rendering them unavailable for legitimate communication  and other legitimate uses, including while driving, working, and performing other critical household tasks for which storage is required.

**ANSWER**:    Denies and denies this appropriate for class action status.

### V.    CLASS ACTION ALLEGATIONS

38.    Class Definition. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Classes (the "Classes") defined as follows:

**National Do Not Call Registry Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing text message or call from or on behalf of CarShield, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Internal Do Not Call Class:** All persons within the United States to whom: (1) Defendant (or a third-party  acting on behalf of Defendant) sent (2) two or more telemarketing calls in a 12-month period, (3) who had previously asked for the calls to stop or for a copy of Defendant's Do Not Call Policy and (4) within the four years prior to the filing of the Complaint.

10

**ANSWER**:    Admits what Plaintiff purports to seek but denies he is entitled to the relief sought.

39.    Excluded from the Classes are counsel, Defendant, any entities in which Defendant has a controlling interest, Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

**ANSWER**:    Admits what Plaintiff purports to seek but denies he is entitled to the relief sought.

40.    The Classes, as defined above, are identifiable through telephone records and telephone number databases.

**ANSWER**:    Denies.

41.    The potential members of the Classes likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

**ANSWER**:    Denies.

42.    Individual joinder of these persons is impracticable.

**ANSWER**:    Denies.

43.    Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

**ANSWER**:    Denies.

44.    Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the class members.

**ANSWER**:    Denies.

11

45.     Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

**ANSWER**:    Denies.

46.     This class action complaint seeks injunctive relief and money damages.

**ANSWER**:    Admit what Plaintiff purports to seek but denies he is entitled to the relief sought.

47.     There are numerous questions of law and fact common to Plaintiff and members of the Classes. These common questions of law and fact include, but are not limited to, the following:

a.     Whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

b.     whether Defendant made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls;

c.     whether Defendant made calls to Plaintiff and members of the Internal Do Not Call Class after having received a stop request, including in retaliation for having made such a request; and

d.     whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

**ANSWER**:    Denies.

48.     Plaintiffs claims are typical of the claims of the Class, as they arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

**ANSWER**:    Denies.

49.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

**ANSWER**:    Denies.

50.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

**ANSWER**:    Denies.

51.     A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA. The interests of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant is small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

**ANSWER**:    Denies.

52.     Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class

appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

**ANSWER**:   Denies.

## FIRST CAUSE OF ACTION

**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

53.    Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

**ANSWER**:   Defendant restates its prior answers.

54.    The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiffs and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

**ANSWER**:   Denies.

55.    Defendant's violations were negligent, willful, or knowing.

**ANSWER**:   Denies.

56.    As a result of Defendant's, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

14

**ANSWER**:    Denies.

57.    Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

**ANSWER**:    Denies.

### SECOND CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act
(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(d))
(On Behalf of Plaintiff and the Internal Do Not Call Registry Class)**

58.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

**ANSWER**:    Defendant restates its prior answers.

59.    The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop.

**ANSWER**:    Denies.

60.    Defendant's violations were negligent, willful, or knowing.

**ANSWER**:    Denies.

60.    As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and

members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

**ANSWER**:    Denies.

<u>**AFFIRMATIVE DEFENSES**</u>

1.      Plaintiff's Complaint fails to state any claims upon which relief can be granted.

2.      Plaintiff's claims, brought on behalf of himself and the putative members of the purported classes as set forth in the Complaint, are barred by the doctrine of unclean hands.

3.      Plaintiff's claims, brought on behalf of himself and the putative members of the purported classes as set forth in the Complaint, are barred by fraud.

4.      Plaintiff's claims, brought on behalf of himself and the putative members of the purported classes as set forth in the Complaint, are barred by the doctrines of acquiescence, estoppel, and/or waiver.

5.      Plaintiff is not entitled to any relief because he expressly consented to, and in fact requested to be contacted by Defendant by submitting his information into Defendant's online information request portal.

6.      Defendant does not advertise by unsolicited outbound telemarketing. Defendant's advertising relies solely on direct mail, television and radio advertisements, social media, and its own website to market its services. Only after a potential customer initiates contact with CarShield through one of these marketing channels, does CarShield ever make any phone calls to consumers.

7.      Without assuming any burden of proof, the alleged putative members of the purported classes are not identifiable, and are not so numerous such as to make joinder of all members impracticable.

16

8.      Without assuming any burden of proof, Plaintiff is not a fair or adequate representative of the alleged putative members of the purported classes as set forth in the Complaint.

9.      Without assuming any burden of proof, Plaintiff and alleged putative members of the purported classes are not similarly situated, as the potential claims of the alleged putative class members reflect variability and each person's consent would have to be evaluated separately.

10.      Without assuming any burden of proof, there are no questions of law or fact common between Plaintiff and the alleged putative members of the purported classes as set forth in the Complaint.

11.      Plaintiff failed to mitigate his damages, and in fact prodded Defendant to make calls by placing calls to CarShield several times after being called.

12.      Plaintiff continued to call Defendant in an attempt to induce additional calls and contact.

13.      Plaintiff's fraudulent conduct waived and bars any claims for relief.

14.      Defendant is entitled to the protections of 47 U.S.C. § 227(c)(5)(C) because Defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA.

15.      Defendant bears no liability for violations because of a bona fide error despite its TCPA-compliant routine business practices. *See* 47 C.F.R. § 64.1200(c)(2)(i).

16.      Defendant reserves the right to assert additional defenses.

17

## DEFENDANT/COUNTER-PLAINTIFF NRRM, LLC d/b/a CARSHIELD'S COUNTERCLAIMS AGAINST PLAINTIFF/COUNTER-DEFENDANT BOBBY MORRIS

Defendant/Counter-plaintiff NRRM, LLC d/b/a CarShield asserts the following Counterclaims against Plaintiff/Counter-defendant Bobby Morris. These counterclaims are made in addition to the foregoing answer and affirmative defenses.

### PARTIES

1. CarShield is a Missouri limited liability company with its principal place of business in St. Charles Country, Missouri.

2. Upon information and belief, Plaintiff/Counterclaim Defendant Bobby Morris is an individual residing in the Eastern District of Missouri, Eastern Division.

### FACTS COMMON TO ALL DEFENSES

3. Bobby Morris is a serial litigant who regularly files class action lawsuits asserting TCPA-related claims in this District. Indeed, a PACER search indicates that in 2025 alone, Morris filed no less than six class action suits in the Eastern District of Missouri, as well as another suit in the Southern District of Indiana, all alleging so-called violations of the TCPA.[1]

4. Upon information and belief, Morris files these lawsuits in an attempt to extort and extract—and based upon a review of the aforementioned cases, has extracted—recovery from numerous other companies predicated on fabricated TCPA claims, for sums far in excess of what a standard TCPA plaintiff would be entitled to if he had a valid claim.

5. CarShield sells vehicle protection plans nationwide, and advertises those plans

---

[1] *See Morris v. BELFOR Franchise Group, LLC,* No. 4:25-cv-01269 (E.D. Mo.); *Morris v. OHMIUX LLC d/b/a Carbinox*, No. 4:25-cv-00663 (E.D. Mo.); *Morris v. Salfilo America Inc. d/b/a Blenders Eyewear*, No. 4:25-cv-00066 (E.D. Mo.); *Morris v. Sonic Industries Services LLC*, No. 4:25-cv-00035 (E.D. Mo.); *Morris v. Acme Electric Motor Inc. d/b/a Acme Tools*, No. 4:25-00020 (E.D. Mo.); and *Morris v. Paronich L Shoe Carnival Inc.*, No. 3:25-cv-00066 (S.D. Ind.).

online through CarShield's own website, www.carshield.com, through various online advertisements and through tens of thousands of print, television, and radio advertisements.

6.      Under the TCPA, Congress afforded injured citizens a private right of action and statutory damages of $500 for negligent violations of certain provisions of the TCPA, which may be trebled by a court of competent jurisdiction in cases of intentional or knowing violations. *See* 47 U.S.C. § 227(c)(5).

7.      On October 26, 2024, Morris (or someone acting at his direction) voluntarily submitted an online request for information through CarShield's free quote form, located at <https://carshield.com/get-free-quote> (the "Form").

8.      Morris entered this information with the specific intention to induce CarShield to call him, so that he could later claim a bogus violations of the TCPA.

9.      Specifically, Morris entered his phone number, email address, Zip code, the make and model of his vehicle, and the current mileage of that vehicle, into the Form.

10.     After manually entering this information into the Form, Morris selected the Form's "GET YOUR FREE QUOTE" button, which notably, is conspicuously placed next to a disclaimer which confirms "I am completing and submitting this form so that CarShield will contact me quickly over phone, text, and/or e-mail to discuss my vehicle."

11.     By entering his information and manually selecting this button, Morris provided his prior express and written consent to be contacted by CarShield.

12.     In accordance with Morris' prior express and written consent to be contacted over phone, text, and/or e-mail to discuss his vehicle, CarShield attempted to contact Morris on October 27, 2024 using the contact information Morris provided via the Form. CarShield did not obtain his information from another source.

13.    Morris did not initially answer, and a CarShield representative subsequently left a voicemail for Morris, indicating that CarShield was reaching out in response to the request he submitted online, and to discuss his vehicle.

14.    Twenty-nine minutes later, in accordance with Morris' prior express and written consent to be contacted, CarShield placed a follow-up call which Morris answered. On this call, Morris verified the vehicle information he provided via the Form, and confirmed (1) the make and model of his vehicle, (2) his zip code, (3) the number of miles on his vehicle, (4) the fact that the vehicle had no check engine light warnings and was not leaking fluid, (5) and that the vehicle was otherwise running well overall. This call was disconnected during an attempted transfer to a sales representative.

15.    At no point during this call did Morris ever state that he wished not to be contacted by CarShield. The call recording makes this crystal clear.

16.    After being disconnected, Morris himself then placed two calls to CarShield in what appeared to be an obvious attempt to reestablish connection with CarShield. Both of these calls, however, were disconnected upon answer.

17.    Following these disconnected call attempts by Morris, CarShield placed a follow-up call. Morris answered, but the call was once again disconnected upon attempted transfer to a sales representative.

18.    Again, at no point during this call did Morris ever say anything about revoking his consent to be contacted.

19.    Upon this disconnection, and in still in accordance with Morris' prior written consent, CarShield attempted to reestablish connection with Morris only twice more—each attempt lasting approximately 1 second prior to suddenly disconnecting. From this point on,

20

CarShield made no more attempts to contact Morris.

20.    Morris, however, did not stop. Morris attempted to contact CarShield several more times.

21.    Morris made another call to CarShield on October 28, 2024, which once again disconnected upon answer.

22.    On November 13, 2024, Morris attempted to call CarShield twice more. At this point, however, CarShield got suspicious of Morris's conduct and blocked Morris' phone number given the nature of his repeated disconnect activity.

23.    CarShield called Morris a grand total of six times—each call being made at Morris' express request and some followed after Morris's calls to CarShield.

24.    Morris only received these calls from CarShield because he requested them via the Form.

25.    Morris provided his information to CarShield through the form so that he would receive calls that he could later claim were unwanted, even though no other person would benefit from his scheme.

26.    Morris never indicated that he did not want to be contacted by CarShield, and in fact, induced additional calls from CarShield by continuing to call back and disconnect.

27.    Upon information and belief, Morris's repeated calls to CarShield were made with the specific intent to inflate his bogus claim to TCPA damages.

28.    Morris knew when he filed this suit that he had specifically requested to receive phone calls, text messages, and emails from CarShield.

29.    Morris's complaint was filed under false pretenses as part of his broader campaign to extract quick settlements through his shotgun approach to TCPA claims.

21

30.     CarShield reasonably relied on the fact that it had received Morris's information through the Form as a basis for believing Morris consented to be contacted by CarShield, and that Morris continued to want to receive those calls.

31.     CarShield took actions based on Morris's scheme, including incurring costs for employee time and resources to call Morris as he requested and solicited.

32.     CarShield has now been required to engage attorneys and incur costs associated with defending against Morris' spurious and fraudulently induced lawsuit—all based on its reasonable reliance on the consent Morris provided as well as Morris's follow-up calls to CarShield.

## COUNT I – COMMON LAW FRAUD

33.     CarShield restates the previous allegations.

34.     Under Missouri law, the nine elements of common law fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity, or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. *Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443 (Mo. banc 1988).

35.     Morris has committed common-law fraud against CarShield because he made material false representations, which he knew to be false and intended for CarShield to rely upon in the manner he contemplated. CarShield was ignorant of the representation's falsity, reasonably and rightly relied upon it as if it were true, and suffered injury as a consequent and proximate result.

36.     Specifically, Morris made a knowing, material, and the false representation when he entered his personal information into CarShield's online information request form, and selected the "GET YOUR FREE QUOTE" button, where Morris specifically represented to CarShield that he was "completing and submitting this form so that CarShield will contact [him] quickly over phone, text, and/or e-mail to discuss my vehicle."

37.     The consent language attached to CarShield's online information request form put Morris on notice that submission of his information through the form would induce CarShield to contact him over the phone, text, or e-mail.

38.     Morris knew this representation was false when he made it, as he only submitted the information request to CarShield so that he could use the resulting calls as a basis for his manufactured TCPA claims.

39.     Morris intended that CarShield rely on his false representation, so that CarShield would then make calls that they reasonably believed Morris had requested, and so that he could use the resulting calls as a basis for his manufactured TCPA claims.

40.     CarShield had no reason to doubt the genuineness of Morris's representation, and was completely ignorant of its falsity until later receiving legal demands from Morris.

41.     CarShield reasonably and rightly relied on Morris's false representation, as CarShield only makes calls to consumers who expressly request to be contacted. CarShield justifiably relied on Morris' false representations when it called Morris to follow up on the information request he submitted. But for receiving these false representations from Morris, CarShield would have never contacted Morris.

42.     As a direct and proximate result of relying on Morris' false representation, CarShield now has to defend this bogus lawsuit and incur significant legal fees and costs defending

23

it. His scheme also took employee time away from making genuine sales.

43.     Morris continues to misrepresent these material facts in his pursuit of this lawsuit, wasting the Court's and Defendant's time and resources in dealing with a lawsuit Morris knows is meritless.

<strong><u>COUNT II – COMMON LAW FRAUD BY NONDISCLOSURE</u></strong>

44.     CarShield restates its previous allegations.

45.     Under Missouri law, the nine elements of common law fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity, or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. *Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443 (Mo. banc 1988).

46.     Where a party fails to speak when the law imposes a duty to do so, that nondisclosure replaces the essential element of a "false, material representation." *Hess v. Chase Manhatten Bank USA, N.A.,* 220 S.W.3d 758, 765 (Mo. banc. 2007).

47.     Morris has committed common-law fraud against CarShield because he made material false representations, which he knew to be false and intended for CarShield to rely upon in the manner he contemplated, and because CarShield was ignorant of the representation's falsity, reasonably and rightly relied upon them as if they were true, and suffered injury as a consequent and proximate result.

48.     Specifically, Morris also made a knowing, material, and false omission when he failed to disclose that he had revoked his consent to be contacted during the telephone

conversations with CarShield representatives. Given that Morris entered the request for information that caused CarShield to call him and gave CarShield every reason to believe that consent to be contacted was valid, Morris had a duty to disclose that he did not wish to receive phone calls from CarShield once he was contacted. Morris took no action whatsoever to correct CarShield's understanding, allowed the calls to rack up, and even induced additional calls by continuously calling CarShield. The recordings reflect this behavior.

49.    Morris had superior knowledge not within the fair and reasonable reach of CarShield, creating a legal duty to disclose, and his silence amounted to a representation where the law imposes a duty to speak.

50.    Morris knew these representations were false when he made them, as he only submitted the information request to CarShield so that he could use the resulting calls as a basis for his manufactured TCPA claims.

51.    Morris intended that CarShield rely on these omissions so that CarShield would make the calls they reasonably believed Morris had requested.

52.    CarShield had no reason to doubt the genuineness of Morris's failure to disclose and was completely ignorant of the falsity until later receiving legal demands from Morris.

53.    CarShield reasonably and rightly relied on Morris' false omissions, as CarShield only makes calls to consumers who expressly request to be contacted. CarShield justifiably relied on Morris's false omission when it issued follow-up calls to Morris in light of both the information request he submitted, and Morris' attempts to call CarShield. But for receiving these false omissions from Morris, CarShield would have never contacted Morris.

54.    As a direct and proximate result of relying on Morris' false omission/representation, CarShield has had to and will incur legal fees and costs to defend against

his fabricated claims. In addition, employees were misdirected away from making actual sales because of Morris's conduct.

55.     Morris continues to misrepresent these material facts in his pursuit of this lawsuit, wasting the Court's and Defendant's time and resources in dealing with a lawsuit Morris knows is meritless.

## COUNT III – ABUSE OF PROCESS

56.     The filing of this action by Plaintiff constitutes an illegal, improper, and/or perverted use of process in that the action was not filed to redress any injury sustained by Plaintiff as a result of Defendant's conduct, but rather, the action was manufactured and filed primarily to promote Plaintiff's ulterior motive of extracting a quick and exceedingly large monetary payment from CarShield outside the regular purview of process based upon false pretenses and without any bona fide legal claim.

57.     The filing of this action by Plaintiff constitutes an abuse of process in that the action was not filed in good faith as Plaintiff knew that any alleged injuries he sustained were not due to Defendant, but rather were solicited, induced, and ultimately caused by Plaintiff's own acts when he voluntarily submitted a request for a free quote on a CarShield plan through Defendant's website.

58.     The filing of this action by Plaintiff further constitutes an abuse of process in that the action was filed as a class action solely to accomplish the unlawful end of acquiring a recovery for an artificially inflated sum that is many times in excess of what can be awarded under the TCPA. Morris does not intend to actually pursue this as a class action (though CarShield is sure once he reads this, he will try to pivot).

59.     Plaintiff has an improper purpose in exercising this illegal, improper, and/or

perverted use of process, as he filed this suit with the primary intent of extorting money from Defendant by using process to obtain money damages to which he knew he was not entitled.

60.     Indeed, Morris has a pattern and practice of filing class action lawsuits for calls that in the best world would entitle him at most to $3,000 per call and then extracting massive payments many multiples higher than the number of alleged calls could ever justify.

61.     The class action allegations, however, aren't real. They are simply alleged in order to extract a large payment to the named plaintiff. In the six class actions filed by Morris in the last year alone, that has been his pattern each time.

62.     To put this in perspective, Morris's stated goal in the complaint is to be compensated for the maximum amount for the alleged seven calls (it was actually six). 7 x $3,000 is $21,000. But he alleged class claims so that he could get CarShield to pay him well into the six figures, which cannot be done legally through the claims in the litigation.

63.     Defendant has been harmed by Plaintiff's willful acts in that CarShield has incurred and will incur significant attorneys' fees and costs in defending this action.

## REQUEST FOR RELIEF

CarShield requests that Morris take nothing from his Complaint, and that the Court enter a judgment that Morris is liable on all counterclaims. CarShield further requests the Court award CarShield actual damages, exemplary damages, interest, costs, attorneys' fees and other litigation expenses, and for all other relief at law and equity, to which CarShield may show itself entitled.

27

Respectfully submitted this  13th day of April, 2025

**DICKINSON WRIGHT, PLLC**

By:    s/*Jeffrey H. Kass*
          Jeffrey H. Kass, No. 60672
          1125 17th Street, Suite 550
          Denver, CO 80202
          Tel: (303) 723-8400
          Fax: (844) 670-6009
          Email: JKass@dickinson-wright.com

          ***Attorneys for Defendant NRRM, LLC d/b/a CarShield***

## CERTIFICATE OF SERVICE

This document was served via the court's efiling system to all counsel of record on this the 13th day of April, 2025.

          s/*Jeffrey H. Kass*
          Jeffrey H. Kass

4923-1626-0254 v2 [105444-68]