IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| BOBBY MORRIS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 4:25-cv-00441 -SPM |
| v. | ) ) | 12-PERSON JURY DEMAND |
| NRRM, LLC, | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT NRRM, LLC d/b/a CARSHIELD'S OPPOSITION TO PLAINTIFF'S
MOTION TO DISMISS COUNTERCLAIMS**

## I.     INTRODUCTION

Plaintiff/Counter-Defendant Bobby Morris's ("Morris") Motion to Dismiss Defendant/Counter-Plaintiff's ("CarShield") Counterclaims (Dkt. No. 24) (the "Motion") is premised entirely on a straw man argument which CarShield *never* made.

Morris claims that "[t]his Court has already heard [CarShield's] consent story and rejected it" because an IP address contained in an Exhibit attached to CarShield's Memorandum in Support of Defendant's Motion to Dismiss Morris' First Amended Complaint (Dkt. No. 9) "could not have originated from any consumer accessing CarShield's website." (Motion, at 1). Notwithstanding the fact that this Court has made no such rulings on the merits of CarShield's evidence, CarShield has *never* made the argument that this IP address forms the basis for CarShield's claims.

While it is outside of the scope of this motion anyway, the reason CarShield never made that argument is because the internal IP address Morris relies upon is merely a byproduct of CarShield's internal cybersecurity system, which reroutes the data of *all* users who provide their information to CarShield when submitting a request to be contacted about vehicle service contracts. Nowhere in CarShield's Answer and Counterclaims to Plaintiff's First Amended Complaint (Dkt. No. 17) (the "Counterclaims") does CarShield mention this IP address—let alone rely on it—because *CarShield does not even collect this information*. If CarShield needs to amend to add these facts, it asks that it be allowed to.

It is from this ill-conceived notion that CarShield is somehow fabricating evidence that Morris contends the Counterclaims are improperly pled. In reality, CarShield has sufficiently and particularly pled three counterclaims for Fraud, Fraud by Nondisclosure, and Abuse of Process, in full compliance with the pleading requirements set forth by Federal Rules of Civil Procedure ("Rule") 9(b). These Counterclaims arise from Morris voluntarily submitting an online request for

1

information through CarShield's free quote form, in which he entered his phone number, email address, Zip code, vehicle information, and current mileage. CarShield's Counterclaims further arise from Morris' conduct (or lack thereof) during the very calls for which he complains.

Morris's Motion fails to set forth any meaningful arguments as to how CarShield has not met the requisite pleading standard, and instead, attempts to muddy the waters with arguments that appear nowhere in the Counterclaims. CarShield has properly alleged each element of its Counterclaims and has done so with more detail than is required. The Motion should be denied.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a Plaintiff need only establish it has pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007). When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package Sys., Inc.,* 592, F.3d 853, 862 (8th Cir. 2010), and "grant all reasonable inferences in favor of the nonmoving party," *Lustgraaf v. Behrens,* 619 F.3d 867, 872-73 (8th Cir. 2010) (citing *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 591 (8th Cir. 2009)). A complaint is considered adequate when the Plaintiff "pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recover is very remote and unlikely.'").

In viewing the complaint in the light most favorable to the pleading party, the court should not dismiss merely because the court doubts that the pleading party will be able to prove all of the necessary allegations. *Bennet v. Berg,* 685 F. 2d 1053, 1058 (8th Cir. 1982).

## III.    ARGUMENT

### A.    MORRIS' MOTION MISCHARACTERIZES THIS COURT'S ORDER, AND IS PREMISED ON A MISUNDERSTANDING OF CARSHIELD'S INTERNAL RECORDS

CarShield set forth the same facts underlying its Counterclaims in CarShield's Motion to Dismiss Plaintiff's First Amended Complaint. (*See* Dkt. Nos. 8-9.)[1] Morris' Motion mischaracterizes this Consent Information, as well as the Court's Order on CarShield's Motion to Dismiss (Dkt. 16), and this mischaracterization underlies every argument set forth in Morris' Motion. CarShield thus addresses each of these mischaracterizations at the outset before turning to the properly pled Counterclaims.

First, contrary to Morris' contentions, the Court has not "rejected" or "flagged as suspect" CarShield's evidence of Morris' consent. (*See, e.g.,* Dkt. 24, at 1 ((1) "This Court has already heard [CarShield's] consent story and rejected it;" (2) "[…] all premised on the very 'submission' this Court already flagged as suspect;" (3) "CarShield should not be permitted to repackage its affirmative defense of consent, the very defense this Court rejected at the pleading stage[.]").) The Court merely held Exhibit 1 was not necessarily embraced by the pleadings, and explicitly "decline[d] to consider any [ ] attachments except the recordings of the calls." (Dkt. 16, at 4.)

Rule 12(b)(6) analysis is a pleading sufficiency test—not a determination on the merits. *See Energy Heating, LLC v. Heat On-The-Fly, LLC*, No. 4:13-CV-10, 2015 WL 11143134 at *9 (D.N.D. Mar. 31, 2015). Morris's characterizations to the contrary are improper and contradicted by the Counterclaim allegations.

---

[1] Exhibit 1 to CarShield's Motion to Dismiss is a complete and accurate copy of an internal CarShield report evidencing the information Morris submitted via the Form, as well as the consent language appeared on the Form. (*See* Dkt. 9-6 (the "Consent Information".)

Second, Morris repeatedly takes the position outside of the Counterclaim allegations that because a "Unique Local IPv6 Address" appears in the Consent Information, CarShield must have fabricated the record as a pretext to call Morris. (*See, e.g.,* Dkt. 24, at 1, 3-7, 11) . This is a fundamental misunderstanding of CarShield's internal records and it attempts to raise issues outside of the Counterclaims.

While CarShield adamantly disputes any insinuation that its records are fabricated, the "Unique Local IPv6 Address" at issue only appears in Consent Information because CarShield reroutes all submissions received through CarShield's various website applications for cybersecurity purposes. While CarShield does not believe it is required at this stage to address this issue, if this Court would like CarShield to amend its Counterclaims to include these facts, it asks it be permitted to.[2]

More importantly for the purposes of Morris's Motion, CarShield has *never* even mentioned this IP address, let alone relied upon it as a basis for its Counterclaims. What CarShield has alleged is that "Morris entered his phone number, email address, Zip code, the make and model of his vehicle, and the current mileage of that vehicle, into the Form," (Counterclaims, at ¶ 9), and then proceeded to select "the Form's "GET YOUR FREE QUOTE" button, which notably, is conspicuously placed next to a disclaimer which confirmed Morris was 'completing and submitting this form so that CarShield will contact [Morris] quickly over phone, text, and/or e-

---

[2] Attached as Exhibit 1 is an example of the data Morris submitted to CarShield with a representative sample of information collected from other consumers who entered their information into one of CarShield's online Forms. As the Court can see, while the "PhoneNumber," "Zip," "CustState," "EmailAddress," "Year," "Make," "Model," "Miles," "RefURL," and other fields vary from customer to customer, because each of these submissions are rerouted through CarShield's internal cybersecurity network, the "IPAddress" for each customer appears as "[fde4:8dba:2000:1ee1:6b20:100:a6e:4]:49546." Unlike the substantive information CarShield records, the information contained in this "IPAddress" field is entirely irrelevant.

mail to discuss [his] vehicle.'" (*Id.* at ¶ 10.) Morris's attempt to mischaracterize the Information Request to allege impropriety on CarShield's part is based on nothing more than wild speculation and is wholly inappropriate—especially at the pleadings stage.

### B. CARSHIELD SUFFICIENTLY ALLEGES FRAUD WITH THE REQUISITE PARTICULARITY

Turning now to CarShield's properly pled Counterclaims, Count I alleges common law fraud against Morris. Under Missouri common law, a claim for fraud requires sufficient allegations of the following the nine elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity, or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. *Herberer v. Shell Oil Co.,* 744 S.W.2d 441, 443 (Mo. banc 1988). Pursuant to Rule 9(b)'s particularity requirement, an allegation of fraud will survive a Rule 12(b)(6) motion if it "identif[ies the] who, what, where, when, and how" of the material misrepresentation. *United States ex rel. Costner v. United States,* 317 F.3d 883, 888 (8th Cir. 2003). CarShield has alleged the factual basis for each element of its fraud counterclaim with more specificity than is required.

#### 1. *Morris' Material Misrepresentation is Sufficiently Alleged*

With respect to the first three elements, CarShield sufficiently alleged the "who, what, when, where, and how" of Morris's material misrepresentation. As to the "who," CarShield alleged that Morris himself submitted an online request for information through CarShield's Form. (Counterclaims, at ¶¶ 7-9.) For the "when," CarShield alleged that Morris submitted his request on October 26, 2024. (*Id.* at ¶ 7.) CarShield also set forth the "where" by identifying the specific URL hosting the Form Morris used to solicit CarShield's calls (<https://carshield.com/get-free-

quote>). (*Id.* at ¶¶ 7-9.) As to the "how," CarShield's Counterclaims allege that Morris "entered his phone number, email address, Zip code, the make and model of his vehicle, and the current mileage of that vehicle, into the Form [and] selected the Form's "GET YOUR FREE QUOTE" button, which [was] conspicuously placed next to a disclaimer which confirm[ed] "I am completing and submitting this form so that CarShield will contact me quickly over phone, text, and/or e-mail to discuss my vehicle." (*Id.* at ¶¶ 8-9, 36.) Finally, as to the "what," Morris falsely represented that he was interested in CarShield's goods and/or services by "completing and submitting [the Form] so that CarShield will contact [him] quickly over phone, text, and/or e-mail to discuss [his] vehicle." (*Id.* at 8-9, 36.)

Morris's primary argument against these three elements ignores the plain language of CarShield's Counterclaims, and instead tries to push the same internal IP address theory debunked above and outside the scope of the taken-as-true Counterclaim allegations (Dkt. 24 at 5.) Morris's reliance on *Walker-Schaut v. Lido Labs Holding Co.,* No. C23-5944 BHS, 2024 WL 4335679 (W.D. Wash. Sept. 26, 2024) fares no better.

First, *Walker* is distinguishable on several grounds, including, but not limited to, the fact that the hyperlink relied upon by the defendant as its basis for the plaintiff consenting to and requesting communications was buried amongst several webpages did not describe who would be contacting the plaintiff or what services they provided, and contained no language suggesting the user was agreeing to be contacted. *Id.* at *2-3. The absence of such explicit consent language is crucial, as it forms the basis of the material representation CarShield has alleged. (*See* Counterclaims, at ¶¶ 7-9, 35-36.) Material misrepresentations based on facts such as these are routinely held as adequately pled under Rule 9. *See Mason v. Spring EQ LLC,* No. 5:24-CV-01833 MWC (AGRX), 2025 WL 1720430 at *3 (C.D. Cal. May 9, 2025) ("Defendant alleges that this

6

representation by Plaintiff "was false" because Plaintiff "did not want to be contacted by LendingTree's Network Partners for the purpose of learning about lending products .... Rather [Plaintiff] wished to receive messages solely to set up a TCPA lawsuit." *Id.* The Court finds that these allegations are particular and sufficiently place Plaintiff on notice as to his alleged false statement"); *see also Hastings v. Smartmatch Insurance Agency, LLC*, No. 4:22-cv-00228-LPR, 2022 WL 4002625, n.47 (noting that to adequately allege a material misrepresentation, "SmartMatch should allege the specific language of the consent form as it appeared on the website [on the date consent was allegedly submitted]").

### 2.    *Morris' Knowledge and Intent are Sufficiently Alleged*

Morris's Motion does not dispute that the Counterclaims sufficiently allege Morris's knowledge of the falsity of his representations, and Morris's intent that such representations should be acted on by CarShield in the manner reasonably contemplated. Indeed, CarShield specifically alleges that "the consent language attached to CarShield's online information request form put Morris on notice that submission of his information through the form would induce CarShield to contact him over the phone, text, or e-mail." (Counterclaims, at ¶ 37.) "Morris knew this representation was false when he made it, as he only submitted the information request to CarShield so that he could use the resulting calls as a basis for his manufactured TCPA claims." (*Id.* at ¶ 38.) Further, "Morris intended that CarShield rely on his false representation, so that CarShield would then make calls that they reasonably believed Morris had requested, and so that he could use the resulting calls as a basis for his manufactured TCPA claims." (*Id.* at ¶ 39.) These elements are properly pled.

### 3. *CarShield's Ignorance of the Falsity of Morris's Representation and Reliance Thereon are Sufficiently Alleged*

CarShield satisfies the sixth, seventh, and eighth elements of common law fraud by alleging that "CarShield had no reason to doubt the genuineness of Morris's representation, and was completely ignorant of its falsity until later receiving legal demands from Morris." (*Id.* at ¶ 40.) Indeed, "CarShield reasonably and rightly relied on Morris' false representation, as CarShield only makes calls to consumers who expressly request to be contacted" and "justifiably relied on Morris' false representations when it called Morris to follow up on the information request he submitted." (*Id.* at ¶ 41.)

Falling back to its "internal IP address theory," Morris attempts to avoid these plainly pleaded facts by asserting that "CarShield had no right to rely on any of the information submitted, particularly when the means of knowledge are exclusively within CarShield's possession [because] the supposed website submission was uniquely within CarShield's control. (Dkt. 24, at 7.) For the reasons stated above, this IP address is entirely irrelevant and outside the scope of the Counterclaim allegations. (Counterclaims, at ¶ 7-10.) CarShield's position on this point has remained consistent since before the initiation of this suit. CarShield has every right to rely on requests submitted by consumers specifically requesting to receive communications and would have had no reason to know that the Morris's submission was made for the purposes of fabricating a TCPA claim.

### 4. *CarShield's Consequent and Proximately Caused Injuries are Sufficiently Alleged*

Last, CarShield has sufficiently pled damages consequently and proximately caused by Morris's material misrepresentations. CarShield specifically alleged that "CarShield took actions based on Morris' scheme, including incurring costs for employee time and resources to call Morris as he requested and solicited," and was forced to "engage attorneys and incur costs associated

with defending against Morris's spurious and fraudulently induced lawsuit[.]" (Counterclaims, at ¶¶ 31-32, 42-43.) These allegations are sufficient to set forth a plausible claim for TCPA-fraud.

Morris's reliance on *Betz v. Glob. Telesourcing, LLC,* No. 21-xc-1320, 2021 WL 5865384 (D.D.C. Dec. 10, 2021) for the proposition that "there is no basis for a defendant to recover its fees in a TCPA suit, even if consent is proven," is entirely misguided. Moreover, at least one other district court has explicitly rejected this case's applicability where a TCPA defendant alleges that its own employee time and resources were wasted as a result of TCPA-fraud. *See Estrada v. Aragon Advert., LLC,* No. 4:23-CV-3407, 2024 WL 5059166 (S.D. Tex. Dec. 10, 2024).

The allegations made in *Betz,* "[c]onstrued generously, [ ] tend[ed] to demonstrate that plaintiff's fraudulent representations were intended to induce reliance by a third party, *i.e.,* the Court, in order to obtain a favorable ruling," and the "*only* action that defendant assert[ed] it took in reliance on plaintiff's allegedly fraudulent statements was to expend money on litigation." *Betz*, 2021 WL 5865384 at *6.

This is entirely distinguishable from CarShield's stated damages of wasted employee time and company resources, in addition to the costs incurred associated with defending against Morris' spurious and fraudulently induced lawsuit. Such damage allegations under these circumstances are regularly held as sufficient for the purposes of pleading TCPA-fraud claims. *Estrada*, 2024 WL 5059166 at *6 (holding *Betz* as inapplicable where Defendants alleged that their own employee time and resources were wasted); *see also Franklin v. Upland Software, Inc.,* No. 1-18-cv-236, 2019 WL 433650, at *4 (W.D. Tex. Feb. 1, 2019), *report and recommendation adopted,* 2019 WL 2745748 (W.D. Tex. Mar. 12, 2019) (Yeakel, J.) (holding that the fact that a TCPA defendant had to, *i.e.,* "spend both employee time and resources … based on [the plaintiff's fraudulent] representations" was sufficient to state a claim for relief that is plausible on its face.);

9

*Anthony v. Fed. Sav. Bank,* No. 1:21-CV-02509, 2022 WL 972305 at *5 (N.D. Ill. Mar. 30, 2022) ("[I]f this tale of fraud and a manufactured lawsuit is true, then the Bank suffered damages both in the form of the monetary value of the Bank's employee time in talking with Anthony and soliciting him for a mortgage product and in the form of the resources in defending the manufactured lawsuit. This element is adequately alleged. All in all, then, the fraud counterclaim adequately states a claim at the pleading stage."). CarShield's counterclaim is well grounded in existing law and is sufficiently pled.

> ### C.     CARSHIELD SUFFICIENTLY ALLEGES FRAUD BY NONDISCLOSURE WITH THE REQUISITE PARTICULARITY

CarShield's second Counterclaim for Fraud by Nondisclosure is similarly pleaded with the requisite particularity. Under Missouri common law, when a party fails to speak when the law imposes a duty to do so, that nondisclosure replaces the essential element of a "false, material representation" in the fraud analysis discussed *supra*. *Hess v. Chase Manhattan Bank USA, N.A.,* 220 S.W.3d 758, 765 (Mo. banc 2007). "A duty to speak arises where one party has superior knowledge or information that is not reasonably available to the other." *Id.* (citing *Andes v. Albano*, 853 S.W.2d 936, 943 (Mo. banc 1993)). "Silence can be an act of fraud where matters are not what they appear to be and the true state of affairs is not discoverable by ordinary diligence." *Id.* (quoting *Bayne v. Jenkins,* 593 S.W.2d 519, 529 (Mo. banc 1980)).

Because this claim necessarily involves the same facts as CarShield's first fraud-based Counterclaim, CarShield incorporates its previous arguments. CarShield will instead focus on Morris's failure to speak despite a legally imposed duty to do so.

CarShield's Counterclaims plainly allege that despite speaking with CarShield's employees who indicated they were "reaching out in response to the request he submitted online," Morris never stated that he did not enter any such online request, never stated that he wished not

to be contacted by CarShield, and never made any attempt to revoke any consent he may have given. (Counterclaims, at ¶ 12-19.) Quite the opposite. Instead, Morris feigned interest on these calls, affirming the information he submitted via the Form (*Id.* at ¶ 14), and even repeatedly placed calls to CarShield after disconnecting the call to make CarShield believe Morris was attempting to reestablish connection, when in reality, he was only inducing additional calls to inflate the bogus TCPA claim he was attempting to build. (*Id.* at ¶¶ 20-22, 26-27.)

CarShield's Counterclaims allege Morris "made a knowing, material, and false omission when he failed to disclose that he had revoked his consent to be contacted during the telephone conversations with CarShield representatives. Given that Morris entered the request for information that caused CarShield to call him and gave CarShield every reason to believe that consent to be contacted was valid, Morris had a duty to disclose that he did not wish to receive phone calls from CarShield once he was contacted. Morris took no action whatsoever to correct CarShield's understanding, allowed the calls to rack up, and even induced additional calls by calling CarShield." (*Id.* at ¶ 48.)

Morris contends that "CarShield owns the website [and] [t]he opt in originated from CarShield's internal network." (Dkt. 24, at 11.) This "internal IP address" theory is discussed at length above. Morris had superior knowledge over CarShield. CarShield had no way of knowing that Morris's submission through the Form was fraudulent, and only ever received Morris's unambiguous revocation of consent in the form of his November 2, 2024 demand letter, *well after* Morris' deception was complete, and after CarShield had already ceased attempting to follow-up on Morris' information request. (*Id.* at ¶ 19.)  This claim is thus also sufficiently pled.

11

### D.     CARSHIELD SUFFICIENTLY ALLEGES A CLAIM FOR ABUSE OF PROCESS

CarShield's third Counterclaim for abuse of process is also sufficiently pled. Under Missouri law, "a Pleading alleging abuse of process must set forth ultimate facts establishing the following elements: (1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted." *Krakover v. Mazur*, 48 F.3d 341, 344 (8th Cir. 1995) (citing *Ritterbusch v. Holt*, 789 S.W.2d 491, 493 (Mo. 1990) (en banc). "These elements are frequently summarized as (1) a willful act of using process (2) for a collateral purpose." *Id.*

CarShield alleges that Morris' filing of this action was a "perverted use of process in that the action was not filed to redress any injury sustained by Plaintiff as a result of Defendant's conduct, but rather, the action was manufactured and filed primarily to promote Plaintiff's ulterior motive of extracting a quick and exceedingly large monetary payment from CarShield outside the regular purview of process based upon false pretenses, and without any bona fide legal claim." (Counterclaims, at ¶ 56.) "Plaintiff knew that any alleged injuries he sustained were not due to defendant, but rather were solicited, induced and ultimately caused by Plaintiff's own acts when he voluntarily submitted a request for a free quote on a CarShield plan through Defendant's website." (*Id.* at ¶ 57.) Further, "the action was filed as a class action solely to accomplish the unlawful end of acquiring a recovery for an artificially inflated sum that is many times in excess of what can be awarded under the TCPA." (*Id.* at ¶ 58.)

Morris's arguments for dismissal of this Counterclaim once again ignore CarShield's plainly stated allegations. CarShield is not merely arguing that "Morris filed and is litigating an authorized lawsuit for amounts authorized by federal statute, but with bad motives." (Dkt. 24, at

12

13.) CarShield is specifically arguing that Morris instituted a malicious suit, which was manufactured entirely for the specific purpose of extracting a class action-sized settlement without any probable cause as to the legitimacy of his claims. (*See* Counterclaims, at ¶¶ 56-63.)

Other district courts have recognized that requests for excessive damages contained in the complaint may serve the basis for abuse of process claims, and CarShield has tailored its Counterclaim to allege that Morris is perpetuating a pattern of behavior in which he willfully manufactures lawsuits, for the collateral purpose of leveraging massive payments which he would never be entitled to, and which he knows there is no factual basis to support. *See Green v. Clingman,* No. 18-817-JAP-SMV at *5 (D.N.M. Sept. 21, 2020) (recognizing requests for excessive damages contained in the complaint as one example of an act considered a wrongful use of proceedings for purposes of a malicious abuse of process claim.). CarShield's Counterclaim thus sufficiently pleads Morris's willful act of perverting process for these improper collateral purposes.

### E.    CARSHIELD HAS ARTICLE III STANDING

Last, Morris also passingly questions this Court's subject matter jurisdiction by purporting to make a factual challenge to standing under Rule 12(b)(1). "To satisfy standing requirements, a plaintiff must: (1) have suffered an injury in fact, (2) establish a causal relationship between the contested conduct and the alleged injury, and (3) show that a favorable decision would redress the injury." *Sierra Club v. Entergy Arkansas LLC*, 503 F. Supp. 3d 821, 838 (E.D. Ark. 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "At the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* at *838-39.

Relying heavily on Morris's misinterpretation of the Consent Information, which is outside the allegations in any event, Morris claims that "he did not enter the information CarShield says was submitted," "had no ability to access any IP address within CarShield's private internal network," and that "it cannot be that CarShield's asserted 'employee time' in placing calls Morris never requested forms an injury in fact." (Dkt. 24, at 3-4.) CarShield disputes each of the contentions set forth in Morris' self-serving declaration, which does nothing to substantively rebut the factual allegations in CarShield's counterclaims. This already has been addressed.

CarShield has sufficiently alleged an injury-in-fact that is traceable to Morris, and which is redressable through these Counterclaims. CarShield alleges that "CarShield took actions based on Morris' scheme, including incurring costs for employee time and resources to call Morris as he requested and solicited," and was forced to "engage attorneys and incur costs associated with defending against Morris's spurious and fraudulently induced lawsuit[.]" (Counterclaims, at ¶¶ 31-32, 42-43.) As noted above, Courts have consistently recognized such damages as actionable in the case of TCPA-fraud claims. *See, e.g., Estrada*, 2024 WL 5059166 at *6; *Franklin,* 2019 WL 433650, at *4; *Anthony*, 2022 WL 972305, at *5.

CarShield's injuries are also solely and wholly caused by Morris's fraudulent actions, and can be remedied through the Counterclaims. CarShield has explained at length the causal connection between the injury CarShield has suffered, and Morris' fraudulent solicitation of the calls giving rise to CarShield's Counterclaims. (Counterclaims, at ¶¶ 7-32.) But for Morris's actions, CarShield would have never suffered these damages—damages which are real, not speculative, and which can be remedied with the benefit of a favorable ruling on the Counterclaims. Article III standing clearly exists here.

14

**F.      CARSHIELD ALTERNATIVELY REQUESTS LEAVE TO AMEND PER RULE 15**

To the extent the Court identifies any deficiencies in the facts specifically pled in connection to any of the aforementioned Counterclaims, CarShield is fully prepared to supplement its allegations. If necessary, CarShield requests leave to amend its Answer and Counterclaims to include additional allegations addressing any pleading deficiencies this Court may identify. Pursuant to Rule 15, leave to amend should be granted liberally. *See In re SuperValu, Inc.*, 925 F.3d 955, 961 (8th Cir. 2019); Fed. R. Civ. P. 15(a)(2) ("The Court should freely give leave when justice so requires.").


Respectfully submitted this 15th day of June, 2026

**DICKINSON WRIGHT, PLLC**


By:      s/*Jeffrey H. Kass*
Jeffrey H. Kass, No. 60672
1125 17th Street, Suite 550
Denver, CO 80202
Tel: (303) 723-8400
Fax: (844) 670-6009
Email: JKass@dickinson-wright.com

***Attorneys for Defendant NRRM, LLC d/b/a CarShield***


## CERTIFICATE OF SERVICE

This document was served via the court's efiling system to all counsel of record on this the 15th day of June, 2026.

s/*Jeffrey H. Kass*
Jeffrey H. Kass

4899-2231-8516 v1 [105444-68]

15