**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| BOBBY MORRIS, individually and on behalf of all others similarly situated,<br><br><br>Plaintiff,<br><br>v.<br><br>CARSHIELD LLC<br><br><br>Defendant. | Case No.   4:25-cv-00441<br><br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF/COUNTER-DEFENDANT BOBBY MORRIS'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

1

## **INTRODUCTION**

CarShield's Opposition accuses Morris of attacking a "straw man," insisting that CarShield "*never* even mentioned this IP address, let alone relied upon it." (Opp. at 5, PageID 180.) But by doing so, CarShield pleads itself out of court. Morris never contended that CarShield *pleaded* the internal IP address. Rather, he argues that CarShield should have pled it under Rule 9. CarShield did not plead this fact, despite Rule 9's particularity requirement. Rather, the record CarShield says proves that *Morris* submitted the online Form, the "Consent Information," cannot, as a matter of basic networking, establish that *any* outside consumer submitted anything, let alone Morris. Rule 9(b) requires CarShield to plead the "who" of the alleged fraud with particularity. CarShield's Opposition concedes it cannot.

CarShield now admits two things that end all three counterclaims. First, it admits it *does not even collect* the originating IP address of a Form submission. (Opp. at 2, PageID 177.) Second, it admits that the only address its records contain is its *own* internal address, which it says is identical for every customer because CarShield "reroutes all submissions" through an internal "cybersecurity" network. (Opp. at 4-5 & n.2, PageID 179-180.) Taken together, those admissions establish that CarShield possesses *no* record evidence tying the Form to Morris, or to any specific person. A fraud claimant that cannot identify, from its own systems, who made the supposed misrepresentation has not pleaded fraud. It has pleaded a guess. And Rule 9(b) requires that fraud allegations premised on a guess be dismissed at the pleadings stage.

Worse for CarShield, it attached the very record on which it relies as Exhibit 1, and that record *disproves* the counterclaims. Examined technically, Exhibit 1 shows the same non-routable internal address, down to the identical source port, for an alleged "sampling" of every customer across more than a year of submissions. CarShield cannot simultaneously hold this

2

record out as the proof that Morris consented and submitted the Form and dismiss its contents as "entirely irrelevant" and "outside the scope of the Counterclaims." (Opp. at 5 n.2, PageID 180.) Either way it loses, either through CarShield's concession that it possesses none of the requisite proof or through the fact that its "proof" is facially inadequate. The Counterclaims should be dismissed with prejudice.

### I.   CarShield's Opposition Concedes It Lacks the Particularized Facts Rule 9(b) Requires.

#### A. CarShield admits it does not possess the originating IP and cannot identify the submitter.

Rule 9(b) requires a fraud claimant to plead "the time, place, and content of the defendant's false representations, as well as . . . *who* engaged in them." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (emphasis added). The "who" here, the person who allegedly submitted the Form and thereby allegedly "represented" a desire to be called, is the linchpin of every count. CarShield's Opposition concedes it cannot supply that fact from its records. CarShield states that it "does not even collect" the originating IP (Opp. at 2, PageID 177), and that the only IP address in the Consent Information is CarShield's own internal address, identical for everyone, because CarShield "reroutes all submissions received through CarShield's various website applications." (Opp. at 5, PageID 180.)

That is a judicial admission that CarShield has no technical means of confirming that Morris, as opposed to a disgruntled employee, lead vendor, automated process, third-party affiliate, or CarShield's own systems, generated the data in its database. CarShield asks the Court to infer that, because the Plaintiff's telephone number (and not even his name) sits in its CRM, Morris must have typed it in. But where the factual information to allege fraud is within knowledge of the party alleging fraud, that party must investigate and plead specifics at the pleading stage. CarShield concedes the only dispositive metadata that would tie Mr. Morris to

3

the submission, his IP address (to say nothing of any other information, such as the user agent or MAC address), is missing from its own systems. The "who" therefore rests on conclusory supposition, which Rule 9(b) forbids.

### B. Exhibit 1 defeats the counterclaims rather than supports them.

In its opposition, CarShield has made the consent information the centerpiece of its consent theory and attached a representative copy as Exhibit 1. (Opp. at 4-5 n. 1, 2, PageID 179-80.) The document is fatal to CarShield on its face, for multiple independent reasons.

First, the "IPAddress" field cannot reflect any outside consumer. Every row of Exhibit 1 displays the identical value *[fde4:8dba:2000:1ee1:6b20:100:a6e:4]:49546*. The address is a Unique Local IPv6 Address, a private, internal network address, and is *not* routable on the public Internet. As CarShield concedes, a member of the public who submitted a form from a home or mobile connection would necessarily arrive bearing a globally routable address, never an internal one. The presence of an internal address in this field means CarShield's system never records where a submission *actually* came from. This is not Morris's speculation. It is precisely what CarShield now concedes, that it "reroutes all submissions" internally and "does not even collect" the originating IP address, the very evidence needed to prove its fraud theory. (Opp. at 2, 5, PageID 177, 180.) Beyond the address, the source port (:49546) is *identical* on every row of Exhibit 1, for submissions CarShield's own records date from September 2024 through September 2025. A constant IP address and port on every record shows each submission, naming different names, all originated from the same source, not from a remote user.

Next, Exhibit 1 does not purport to capture anything Morris did. On its face, Exhibit 1 is simply a lead record, recording what CarShield's systems *did with a lead*. It does not substitute for, and is not, verifiable proof that Morris personally submitted a web form or anything at all. Tellingly, the "FullName" field is blank for every row, including Morris's, while "FirstName"

4

and "LastName" (fields AB and U) have Mr. Morris' name, which is further indicia of unreliability.

The dataset also bears the fingerprints of an advertising pipeline tending to show third-party traffic and lead generation. The sample CarShield chose to attach is shot through with paid advertising and third-party lead generation artifacts, things like campaign tags, ad-group identifiers, paid-search keywords, pay per click (PPC) traffic sources, a gamified "SurpriseWheel" source, a separate carshieldprotection.com domain, and encoded click identifiers consistent with Google Ads. Whatever else this shows, it does not establish that a specific human named Bobby Morris typed his information into carshield.com and thereby made a representation to CarShield, the very thing CarShield must plead with particularity.

Finally, even CarShield's particularized allegations do not match its own exhibit. CarShield pleads that Morris submitted the Form "[o]n October 26, 2024." (Countercl. ¶ 7.) Exhibit 1 records the InsertedDate and submitDate for Morris's row as October *27*, 2024. A claimant whose pleaded "when" is contradicted by the document it says proves the "when" has illustrated its failure to meet Rule 9's particularity command.

### C.  The Counterclaims plead the "who" with no facts at all.

CarShield cannot escape the dilemma brought about by its own "evidence." Notwithstanding whether the attempt to bring in the exhibit as evidence in opposition to Plaintiff's motion to dismiss is permissible or is a matter embraced by the pleadings to the point where the Court may even consider it, Plaintiff is cognizant that CarShield itself urges the Court to consider it. But, as explained above, its only documentary evidence contradicts the allegations it is offered to support. Exhibit 1 shows no outside submitter, and no other proof that Morris submitted anything, and no other evidence tying the purported submission to Morris, and therefore no representation by Morris.

5

Alternatively, if CarShield retreats to its other position, that the Consent Information and its contents are "entirely irrelevant" and "outside the scope of the Counterclaim" (Opp. at 9, PageID 184), then CarShield admits that the Counterclaims plead the "who" and "how" of the fraud with *no* supporting facts whatsoever, resting on the bare conclusion that Morris submitted the Form. That bare conclusion cannot satisfy Rule 9(b) either. CarShield does not get to invoke the record as proof when convenient and disclaim it as irrelevant when its contents bite. Both roads lead to dismissal.

## II.    CarShield's "Cybersecurity Rerouting" Theory Is Self-Defeating.

Recognizing the problem, CarShield offers a new explanation found nowhere in its Counterclaims, that the internal address appears "only" because CarShield reroutes all submissions through an internal "cybersecurity" network. (Opp. at 5, PageID 180.) This rescue effort fails three times over.

First, it is not pleaded, and a party cannot amend through a brief. The rerouting theory appears for the first time in an opposition memorandum, advanced by attorney argument and a newly minted exhibit. But it is well established that a complaint may not be amended by the briefs in opposition to a motion to dismiss. *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989). CarShield's own request to amend "to add these facts" (Opp. at 2, PageID 177) concedes that the operative Counterclaims do not contain them and that it improperly attempts to amend through opposition. Relatedly, it is unsupported. CarShield offers no declaration or any other competent evidence for the assertion that a "cybersecurity" system overwrote the originating IP on every record. It is *ipse dixit*, and it is offered to rehabilitate a document that, on its face, says the opposite of what CarShield needs.

6

Finally, even if credited, this theory confirms the incurable defect in CarShield's counterclaims. As a practical matter, if CarShield has invested in a cybersecurity system to route lead data, it defies explanation why that cybersecurity system would allegedly remove the very information CarShield needs to prevail on its fraud theory. The purpose of a cybersecurity system is to identify *where* traffic originates so that bad actors can be recognized, traced, and blocked, not to overwrite every visitor's address with a single, identical internal value. A system that did the latter would be worthless for the security purpose CarShield invokes, because it would render every submitter, legitimate or malicious, indistinguishable.

CarShield thus asks the Court to accept, on attorney argument alone, that it built a security system whose only demonstrated effect is to destroy the *only evidence* that could possibly even establish the "who" of its own fraud claim. The far more natural inference, and the one Rule 9(b) exists to prevent CarShield from papering over, is that CarShield simply does not know who submitted the Form, because its records never captured it or that it discarded such information. Crediting the rerouting theory only establishes that CarShield *discards* the originating IP and retains an internal placeholder in its place. That is a concession that CarShield's records contain no information about who actually submitted the Form. The theory does not cure the Rule 9(b) defect; it proves it. For the same reason, the requested leave to amend would be futile: the new "fact" CarShield proposes to add destroys, rather than supplies, the particularity Rule 9(b) demands. *See infra* Part VI. An allegation that defeats itself cannot be rescued by repeating it in a brief any more than any futile amendment.

III.    **CarShield Fails to Rebut the Independent Defects in Its Fraud Counterclaim.**

Even setting aside the threshold "who" problem, the Opposition does not save Count I, the fraud counterclaim, from the substantive defects identified in the Motion.

Start with falsity. CarShield does not engage the holding of *Walker-Schaut v. Lido Labs Holding Co.*, 2024 WL 4335679 (W.D. Wash. Sept. 26, 2024). It attempts to distinguish *Walker* only on the ground that the consent language there was buried and ambiguous. (Opp. at 7, PageID 182.) But *Walker*'s controlling point survives that distinction untouched. Even a genuine opt-in is a *true* statement of a desire to receive calls, not a *false* representation, and a plaintiff's litigation intent is not an actionable misrepresentation of existing fact. *Id.* at *4. CarShield does not allege Morris used a false name, alias, or any other affirmative fabrication, the feature present in the cases permitting TCPA-fraud counterclaims to proceed. Falsity fails as a matter of law. For that matter, CarShield's evidence is even weaker than that in *Walker*, where the parties did not even dispute the language on the website at all or the website submission, based on the evidence there. Here, CarShield has no evidence.

Continue with materiality and reliance. CarShield's Opposition does not dispute that it calls everyone who allegedly submits the Form. Morris's undisclosed alleged subjective intent, whatever it was, was therefore *immaterial* to CarShield's decision to call *at all*. CarShield would have placed the calls regardless. An alleged "misrepresentation" that would not have changed the hearer's conduct is not material. For similar reasons, CarShield did not rely on anything Morris is alleged to have said or done. CarShield responds only that it "has every right to rely on requests *submitted by consumers*." (Opp. at 9, PageID 184.) But Missouri law forecloses a right to rely where the means of knowledge are the relying party's own. *See In re Kinard*, 998 F.3d 352, 355 (8th Cir. 2021). Here the means of knowledge were exclusively CarShield's, with its own website, network and security routing system generating the record. CarShield's own Opposition confirms it controls that infrastructure. A party cannot be "defrauded" by a record its

8

own systems generated and that any competent administrator could recognize as internally originated.

Finally, CarShield has not been injured. CarShield concedes that *Betz v. Glob. Telesourcing, LLC*, No. 21-cv-1320, 2021 WL 5865384 (D.D.C. Dec. 10, 2021), bars recovery of litigation costs in TCPA actions as fraud damages, and tries to escape it by claiming some unspecified "employee time." (Opp. at 10, PageID 185.) That fails twice. First, the "employee time" spent placing calls is CarShield's ordinary business activity, self-inflicted, and squarely contradicted by CarShield's positions that the calls were lawful and consented to and that it calls everyone who submits information to their website without first verifying any of the information. Second, *Mason v. Spring EQ LLC*, No. 5:24-cv-01833 MWC, 2025 WL 1720430, at *4 (C.D. Cal. May 9, 2025), a case CarShield itself relies upon, pointed out that a defendant's failure to specify what *specific* employee time it incurred for the *particular plaintiff's* communications is insufficient to meet Rule 9(b)'s particularity requirement. CarShield's Counterclaims contain only the same generic "employee time and resources" boilerplate *Mason* rejected. And CarShield's additional authorities, including *Estrada*, *Franklin*, and *Anthony* cannot supply the missing representation by Morris in any event as CarShield admits its records are deficient. Moreover, they are easily distinguishable on face, with the plaintiff in *Estrada*, for example, using a fake name to submit the web form, which is precisely the type of conduct absent here.

**IV.    CarShield's Fraud by Nondisclosure Counterclaim Fails Because There Is No Duty, and CarShield's Own Pleadings Contradict It.**

CarShield's nondisclosure theory inverts the relationship the law actually describes. A duty to speak arises only from a fiduciary relationship, an inequality of condition, or one party's possession of superior knowledge not within the fair and reasonable reach of the other. (Mot. at 11, PageID 186.) CarShield pleads none. It owns the website, controls the network and the

"rerouting" system it now invokes, and placed the calls. If anyone holds superior knowledge of the lawfulness of CarShield's own telemarketing operation, it is CarShield. A counterclaim that imposes on the consumer a duty to disclose the lawfulness of the caller's conduct is an inversion of the TCPA.

CarShield's own pleadings and documents also contradict Count II. The premise of the nondisclosure claim is that Morris allegedly failed to disclose that he had revoked his consent. Yet CarShield's Answer repeatedly denies that Morris ever revoked consent or asked the calls to stop. CarShield cannot plead, in one breath, that Morris never revoked consent and, in the next, that he fraudulently concealed his revocation of consent. The two positions are mutually exclusive. Compounding the problem, CarShield's theory of silence is irreconcilable with its own narrative that, when Morris called back to lodge an internal Do Not Call request, he was *blocked by CarShield*. CarShield cannot simultaneously block Morris from calling back in an attempt to lodge a Do Not Call request, while simultaneously bombarding his phone multiple times in the span of a single hour and then fault Morris for some alleged "silence." Moreover, this theory completely ignores the correspondence Morris sent to CarShield through another method reasonably available to him, and then receiving a sarcastic response scrawled in Sharpie and highlighted. Affirmative attempts to call back and stop incessant calls is not silence.

V.    **CarShield's Abuse of Process Counterclaim Fails Because CarShield Concedes Morris Pursues an Authorized Suit for Authorized Relief.**

CarShield's Opposition supplies the concession that dooms Count III. CarShield acknowledges that Morris "filed and is litigating an authorized lawsuit for amounts authorized by federal statute," quibbling only with his "motives," whereby it contends that Morris allegedly instituted a "malicious" suit that was "manufactured." (Opp. at 13-14, PageID 188-189.) Under Missouri law, that is not abuse of process. "No liability attaches where a party has done nothing

10

more than pursue the lawsuit to its authorized conclusion *regardless of how evil a motive he possessed at the time*," and "the use itself may not be inferred from the motive." *Trs. of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC*, 585 S.W.3d 269, 278 (Mo. 2019) (emphasis added). Seeking statutory damages Congress authorized under 47 U.S.C. § 227(c)(5), and class treatment Rule 23 expressly permits, is the regular use of process, not a perversion of it. That CarShield might have an affirmative defense to those claims and their legitimacy, as likewise authorized by law, does not transform the lawsuit into one that abuses process. If that were the case, every lawsuit that had some sort of affirmative statutory defense would constitute abuse of process. Both the statute, and its affirmative defenses, are authorized and warranted by law. That being the case, there can be no abuse of process under Missouri law.

CarShield's reliance on *Green* does not help it. That decision applies *New Mexico's* abuse of process framework, whose elements differ from Missouri's. It does not supply the act Missouri requires, "an illegal, improper, perverted use of process . . . neither *warranted nor authorized*." *Ritterbusch v. Holt*, 789 S.W.2d 491, 493 (Mo. 1990) (emphasis added). As explained above, the TCPA both authorizes suit and an affirmative defense to that suit. CarShield identifies no act beyond filing and litigating the suit and seeking the relief the statute and Rules authorize. Its speculation that Morris does not "intend" to pursue class certification is not an act of process at all. It is conjecture, and it cannot supply the missing element.

## VI.    **CarShield Lacks Article III Standing.**

On Morris's factual challenge under Rule 12(b)(1), "no presumptive truthfulness attaches" to CarShield's allegations, and once Morris introduced evidence by declaration (including his declaration denying that he submitted any information), the burden shifted to CarShield to prove jurisdiction, including through a counter-declaration of its own. *Osborn v.*

11

*United States*, 918 F.2d 724, 730 (8th Cir. 1990); *Howell v. SmartMatch Ins. Agency, LLC*, No. 4:23-CV-00040-BCW, 2023 WL 6478881, at *2 (W.D. Mo. Sept. 29, 2023). Indeed, other courts in the TCPA context have *dismissed* cases on Article III grounds when the defendant has submitted a sworn declaration denying that they have placed the calls at issue, which the plaintiff failed to controvert. *Baccari v. Carguard Admin., Inc.*, No. 22-CV-1952, 2022 WL 3213839, at *3 (E.D. Pa. Aug. 8, 2022). The inverse is true here.

CarShield answers with unsworn attorney argument and a spreadsheet that, as shown above, affirmatively undermines its position. It also answers with speculation that someone else acting on Morris' behalf somehow submitted the web form, despite Mr. Morris explicitly disclaiming this in his declaration. That does not carry its burden of satisfying Article III's injury in fact requirement, particularly when the Plaintiff has provided an uncontroverted declaration, where CarShield adduces *no evidence* showing the Plaintiff submitted anything, and where the only evidence cuts the *other way. Cf. id.* Moreover, even assuming traceability was met (it is not), the only injury CarShield identifies, the cost of defending this suit and "employee time" placing calls, are not a cognizable injury in fact, let alone traceable to Morris. The TCPA is not a fee-shifting statute, and *CarShield*, not Morris, placed the calls of its own volition. CarShield cannot manufacture injury from its own conduct.

## VII.    <u>Leave to Amend Would Be Futile.</u>

Finally, leave to amend should be denied as futile. Leave may be denied where the proposed amendment could not survive a motion to dismiss. *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). CarShield's defects are baked into its own evidence and admissions and no amount of repleading will change the fact that its own evidence is inadequate. The only new "fact" CarShield proposes, that it reroutes *and discards* originating IP addresses, confirms that it

*cannot* identify who submitted the information alleged, making the "who" of fraud unpleadable.

CarShield cannot replead its way out of its own evidence.

## CONCLUSION

For the foregoing reasons, and those set forth in the Motion, Plaintiff/Counter-Defendant

Bobby Morris respectfully requests that the Court dismiss CarShield's Counterclaims in their

entirety, with prejudice, and grant such further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED AND DATED this June 22, 2026

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.
> E.D. Mo. # 333687PA
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, Pennsylvania 19038
> Phone: 215-225-5529 (CALL-LAW)
> Facsimile: 888-329-0305
> a@perronglaw.com

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically

send a copy to all attorneys of record on the case.

Dated: June 22, 2026

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong

13